THE AVON MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6246.   Promulgated May 28, 1927.

1. Rate of depreciation as determined by the Commissioner affirmed.

2. Traveling expenses and loss allowed as deductions from gross income.

3. Valuation of cotton inventory determined.

*N. W. Ellison, Esq., W. M. Parker, Esq.,* and *E. S. Parker, Jr., Esq.,* for the petitioner.
*Shelby S. Faulkner, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies for the fiscal years ending March 31, 1918, and March 31, 1920, in the respective amounts of $29,141.64 and $26,120.11. In the notice of deficiency with respect to the foregoing years, the petitioner was likewise notified of the results of an examination of its returns for the fiscal years ending March 31, 1919, March 31, 1921, and March 31, 1922, but since this examination showed either overassessments or no change in tax liability, these years will be considered only in so far as necessary to a final determination of the issues involved in the years where deficiencies are shown.

### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of North Carolina with its principal place of business at Gastonia, where it is engaged in the manufacture of cotton yarns.

During the years covered by this appeal the petitioner operated its mill 120 hours per week, while the normal run of such a mill is 60 hours per week. On account of unusual conditions during these years not only was there a greater labor turnover, but also a lower degree of efficiency among the laborers employed, particularly among the night workmen, than is normally the case. As a result of almost continuous operations, the machinery was not kept oiled and in the state of repair that is accomplished when the mill is run only 60 hours per week. A further factor which tended to accelerate depreciation is that the mill in question is located within from 75 to 100 feet of the main line of the Southern Railway, as a result of which passing trains produce certain vibration of the plant and, in the summer when the doors and windows facing the railroad are open, cause cinders to blow in and injure the machinery.

During the fiscal year ending March 31, 1920, petitioner paid to S. M. Robinson $1,500 on account of traveling expenses incurred in the sale of yarns and purchase of raw materials for the petitioner.

In 1911, petitioner purchased certain machinery and equipment incident to a change in its method of manufacture, paying therefor $62,500. The machinery and equipment was received after August, 1911, and installation was begun in 1911, though the complete installation was not effected and the machinery placed in operation until some time in 1912. This equipment was discarded in 1919, and sold as junk in August, 1919, petitioner receiving therefor $2,129.77.

Petitioner has in its inventory for the various years on appeal raw cotton, goods in process, and finished goods. As cotton is purchased by the petitioner, it is weighed, tagged, and placed in the warehouse, an entry being made on its cotton book to show the number of the bale, the weight and cost. When cotton is placed in process, an appropriate entry is made in the cotton book to show the bale or bales withdrawn.

The Commissioner, in valuing the raw cotton inventory, used a cost basis as disclosed by the petitioner's cotton book and original inventory records, making corrections in the poundage used by the petitioner in preparing its returns on account of bales of cotton which had been opened by the petitioner on the various inventory dates, but not yet placed in process. With the foregoing exception, and an arbitrary reduction in value at March 31, 1918, the inventory of raw cotton as used by the Commissioner is that used by the petitioner in its original returns, both as to poundage and cost prices. The parties are likewise in agreement as to the cotton consumed for the years in question.

In revised inventories contended for in this proceeding, petitioner determined the cost per pound of raw cotton on hand at the various inventory dates on a weighted-average basis by taking into consid-

eration the opening inventories and purchases of raw cotton during the year. These costs were used in valuing raw cotton which entered into goods in process and finished goods on hand at the respective inventory dates, as well as the raw cotton inventory. The foregoing method was not applied at April 1, 1917, no change being made from the original inventory as submitted.

The Commissioner, in determining the cost per pound of raw cotton entering into goods in process and finished goods on hand at the various inventory dates, used a weighted-average cost arrived at from sufficient of the most recent purchases immediately prior to the respective inventory date to equal the raw cotton inventory on these dates.

Both the petitioner and the Commissioner have considered the goods in process as one-half completed on the respective inventory dates and likewise both parties are in agreement as to the poundage of raw cotton entering into goods in process and finished goods on the various inventory dates.

The Commissioner, in determining the manufacturing costs applicable to the finished goods on hand, took the total manufacturing costs for the year immediately preceding the inventory date and divided this total by the poundage of yarn produced during the year, the resulting quotient plus the cost per pound of raw cotton as determined above, being considered as the total cost per pound of yarn produced. The total poundage of finished goods on hand was multiplied by the foregoing total cost per pound to arrive at the total cost of finished goods on hand.

To determine the cost of goods in process on hand at an inventory date, the Commissioner used the same cost per pound of raw cotton as in the case of finished goods and one-half of the manufacturing cost per pound as determined in the case of finished goods, the total poundage of goods in process being multiplied by the total of the two foregoing amounts to arrive at the cost of goods in process on hand.

In the Commissioner's computation of costs, no allowance was made for waste of cotton in manufacturing operations, other than to the extent to which it is given effect in determining unit-manufacturing costs. The percentage of waste was as follows: Fiscal year ending March 31, 1918, 18.58 per cent; fiscal year ending March 31, 1919, 19.65 per cent; fiscal year ending March 31, 1920, 15.42 per cent; and fiscal year ending March 31, 1921, 18.47 per cent. The sales of waste in the foregoing years were $9,565.52, $4,166.38, $10,690.67, and $5,925.85, respectively.

The parties are in agreement as to manufacturing costs except that depreciation on tenement houses, and certain taxes and insurance

were considered by the Commissioner as manufacturing costs, whereas the petitioner did not so consider them in its revised computations. The taxes and insurance here in question are as follows: Fiscal year ending March 31, 1918, taxes $1,904.22, insurance $1,705.83; fiscal year ending March 31, 1919, taxes $5,316.03, insurance $952.03; fiscal year ending March 31, 1920, taxes $2,814.59, insurance $472.66; and fiscal year ending March 31, 1921, taxes $7,194.03, insurance $2,553.30.

## OPINION.

LITTLETON: The issues in controversy in this case are:

(1) Rate of depreciation on machinery and equipment.

(2) Whether $1,500 paid by petitioner to S. M. Robinson as traveling expenses is an allowable deduction from gross income.

(3) Whether petitioner is entitled to a loss on account of certain machinery discarded and scrapped.

(4) Basis for the valuation of petitioner's inventory of raw cotton, goods in process, and finished goods.

The Commissioner allowed a depreciation rate of 10 per cent on petitioner's machinery and equipment on the theory that 5 per cent is a reasonable rate for a cotton mill of this type when operated at a normal run of 60 hours per week, but that since this mill operated 120 hours per week under certain abnormal conditions, a rate of 10 per cent was substantiated. Petitioner claims a rate of 12½ per cent.

The only witness who testified with respect to the life of the depreciable assets in question was the petitioner's bookkeeper who had had approximately 25 years experience in bookkeeping work around cotton mills. He stated that in his opinion the life of such machinery under normal conditions was from 16 to 18 years, but that when operated under the abnormal conditions of the years on appeal, its life would be from 8 to 9 years. On the other hand he testified that machinery which was in the plant when he entered petitioner's employment in 1917 was still in operating condition, and when testifying as to the proper rate of depreciation for some of the same class of machinery which was discarded in 1919—a part of which period covered the years here in question—he stated that the normal life of this machinery was 20 years. Upon a consideration of the entire evidence presented, the Board is of the opinion that the petitioner has not submitted sufficient information to show that the deduction allowed by the Commissioner is not reasonable and, therefore, it is approved.

As to the second item, we have found that $1,500 was paid by the petitioner to S. M. Robinson in the fiscal year ending March 31, 1920, as traveling expenses incident to the purchase of its raw material and sale of yarns in the same year. This is an ordinary and necessary expense and, therefore, should be allowed as a deduction from gross income in the fiscal year ending March 31, 1920.

In petitioner's amended petition, various losses were claimed on account of machinery and equipment discarded and scrapped, though at the hearing evidence was introduced only as to certain items purchased in 1911 at a cost of $62,500 and discarded in August, 1919, when a scrap value of $2,129.77 was realized. The difference between cost and realized scrap value, less sustained depreciation, which should be computed at 5 per cent prior to April 1, 1917, and at 10 per cent thereafter, is an allowable deduction from gross income for the fiscal year ended March 31, 1920, and should accordingly be allowed.

In regard to the inventory question, no evidence was introduced as to market values, and no contention advanced with respect to such value, petitioner being on a cost basis of pricing its inventories.

The issue raised in this case with respect to the valuation of raw cotton entering into the raw cotton inventory as well as the valuation of raw cotton entering into the inventory of goods in process and finished goods, is identical with that raised in *Ozark Mills, Inc.,* v. *Commissioner,* 6 B. T. A. 1179, the petitioner there contending, as here, for the use of an average-cost basis. In the foregoing case the Board held in effect that when a taxpayer is on a cost basis for the valuation of its inventories and evidence is available from which a reasonably accurate cost can be determined, such cost should be used rather than the "average-cost" method of the petitioner or the "most-recent-purchases" method followed by the Commissioner.

The method suggested in the *Ozark Mills, Inc.,* appeal with respect to valuing the raw cotton inventory was not only substantially followed by the petitioner in the instant case (with the exceptions noted in our findings of fact) in filing its original returns, but also approved by the revenue agent in his examination. The action of the Commissioner as to this feature is, therefore, approved.

The Commissioner, in determining the cost of raw cotton entering into the inventory of goods in process and finished goods, computed a weighted-average cost by the use of sufficient most recent purchases immediately prior to the inventory date to equal these classes of inventory items. In the *Ozark Mills, Inc.,* appeal, *supra,* the Board rejected this method as well as the average-cost method for the reason that the petitioner showed that it was possible from its records to determine a more nearly accurate actual cost. In the foregoing opinion, the Board said that a cost valuation of raw cotton entering into finished goods should be determined by the use of the costs of sufficient cotton most recently placed in process prior to the various inventory dates to equal the poundage in the finished goods inventory and that the same method should be followed with respect to goods in process.

Since the petitioner, in the present proceeding, testified that similar records are maintained as in the case of *Ozark Mills, Inc.*, the rule laid down in that case with respect to a cost valuation of raw cotton entering into goods in process and finished goods should be followed in the instant case (giving due consideration in each instance to waste).

In addition to the valuation of raw cotton entering into goods in process and finished goods, the petitioner objects to the method pursued by the Commissioner in arriving at unit-manufacturing costs. The Commissioner determined such costs by dividing the total manufacturing costs for the year preceding an inventory date by the total poundage of finished goods produced during the year, the quotient so obtained being considered the manufacturing cost per pound applicable to finished goods on hand at the particular inventory date being considered. Since goods in process on hand at an inventory date were considered one-half completed—a feature on which both parties are agreed—one-half of the foregoing unit-manufacturing cost was considered as the unit-manufacturing cost applicable to goods in process.

The petitioner contends that by this method the entire manufacturing costs are first being applied to finished goods and then an additional amount to goods in process. This argument overlooks the fact that the unit cost obtained is arrived at by dividing the total pounds of yarn produced—not total pounds of finished yarn on hand—into the total manufacturing expenses for the purpose of determining what it cost to produce a pound of finished yarn, and that included in this finished yarn is yarn which was partly completed at the beginning of the year. Obviously, such a method may not be entirely accurate for the reason that the manufacturing expenses which are included in the goods in process at the beginning of the period may differ from those in the goods in process at the end of the period. To reach that mathematical nicety for which the petitioner asks, it would be necessary to have an exact analysis of the manufacturing expenses applicable to the goods in process at the beginning of the period under consideration as well as the manufacturing expenses at the end of the period. The percentage of error which would occur by following the Commissioner's method would be dependent upon the extent to which the amount of goods in process, stage of completion, etc., at the beginning of the period differed from those at the end.

Since sufficient information was not submitted as to petitioner's method to show that it reaches an any more nearly accurate result than that used by the Commissioner, and since, as we said in the *Appeal of Demarest Silk Co.*, 4 B. T. A. 741, " if the result obtained

by the Commissioner in his computation is just and reasonable, this Board will not disturb it regardless of the method used in making the computation," the action taken by the Commissioner in this respect must prevail.

In affirming the method pursued by the Commissioner, it is apparent that average rather than actual manufacturing costs are being used. Since, however, both the petitioner and the Commissioner used only total costs for the entire year, no segregation by periods being furnished, the prima facie correctness of the Commissioner's determination in this respect will not be disturbed.

An additional feature on which the parties are agreed is that in any valuation of the inventories of a cotton mill, consideration should be given to the waste which occurs in manufacturing operations, the only question being whether this has been done by the Commissioner. We are convinced that when the Commissioner determined a unit-manufacturing cost by dividing the total of goods produced during the years into total manufacturing expenses, waste was being considered for the reason that he was dealing with costs incident to the completion of the finished product. When, however, he applied one-half of this unit-manufacturing cost to goods in process without considering the goods in process on a finished-goods basis, the full waste is not being given consideration, and such error should be corrected in a recomputation under this decision. Similarly, the Commissioner is in error in failing to give proper consideration to the relation to cost of the amount realized from the sale of waste, which error should likewise be corrected.

Finally, the petitioner contends that taxes and insurance are not proper manufacturing costs. In the absence of direct evidence as to the character of taxes and insurance here in question, the Board can do no other than affirm the action of the Commissioner in including these items in manufacturing costs.

The controversy between the Commissioner and the petitioner as to depreciation on tenement houses as a manufacturing cost is more apparent than real. In the notice of deficiency mailed to the petitioner, the Commissioner conceded that such depreciation should be offset by the rental received from such houses and at the hearing the petitioner conceded that one item would practically offset the other. It is, therefore, the opinion of the Board that the parties themselves have, in effect, disposed of this feature.

Recomputation should be made in accordance with the foregoing.

*Judgment will be entered on 30 days' notice, under Rule 50.*