T.C. Memo. 1996-225


UNITED STATES TAX COURT


JAMES K. ROBERTS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10322-93.                    Filed May 16, 1996.


The issues for decision are (1) whether petitioner failed to report certain items of gross income, (2) whether he is entitled to certain disallowed Schedule C and Schedule A deductions, and (3) whether he is liable for certain additions to tax.

1. <u>Held</u>: Except for one item, P has failed to prove that the income items in dispute were not gross income to him.

2. <u>Held</u>, <u>further</u>, P is not entitled to any of the disputed deductions disallowed by R.

3. <u>Held</u>, <u>further</u>, R's determination of the disputed addition to tax under sec. 6651, I.R.C., is sustained.

4. <u>Held</u>, <u>further</u>, R's determination of additions to tax under sec. 6653(a), I.R.C., is sustained.

5.  Held, further, R's determination of additions to tax under sec. 6661, I.R.C., is sustained.


Samuel G. Weiss, for petitioner.

Jody Tancer and Mark A. Ericson, for respondent.


MEMORANDUM OPINION

HALPERN, Judge:  By notice of deficiency dated February 26, 1993 (the notice of deficiency), respondent determined deficiencies in income tax and additions to tax as follows:

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) or (a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1986 | $7,267 | $617 | $394 | 50% of interest due on $7,267 | $1,817 |
| 1987 | 24,372 | 1,522 | 2,127 | 50% of interest due on $24,288 | 6,072 |
| 1988 | 7,632 | --- | 382 | --- | 1,908 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Each of the parties has conceded certain issues, and the parties have agreed to the resolution of certain other issues. The issues remaining for decision are (1) whether petitioner failed to report certain items of gross income, (2) whether he is entitled to certain disallowed Schedule C and Schedule A deductions, and (3) whether he is liable for certain remaining additions to tax.  The parties have stipulated numerous facts,

which we so find. The stipulations of fact filed by the parties and attached exhibits are incorporated herein by this reference. Although the issues remaining for decision are principally factual, we need find few facts in addition to those stipulated by the parties. Accordingly, we have not divided our report into two sections, one comprising our findings of fact and the other setting forth our opinion. The additional findings we must make are contained in the discussion that follows. After setting forth certain background information, we shall address (1) the adjustments made by respondent that remain in dispute and (2) the additions to tax that remain in dispute. Petitioner bears the burden of proof on all questions of fact. Rule 142(a).

I. Background

Petitioner resided in Huntington, New York, at the time the petition in this case was filed.

During 1986, petitioner was employed as an automobile salesman by two different automobile dealerships, Sports Imports Inc. (Sports Imports) and Rallye Motors, Inc. (Rallye Motors). Petitioner was unemployed from approximately April 1986, when his employment by Sports Imports ended, until December 1986, when his employment by Rallye Motors began. During 1987 and 1988, petitioner was employed as an automobile salesman by Rallye Motors. During 1987 and 1988, petitioner owned a horse racing and breeding business. Petitioner is a frequent gambler.

For all of the years in issue, petitioner made his return of Federal income tax on the basis of a calendar year. Petitioner filed his 1987 Federal income tax return on July 6, 1988.

## II. Disputed Adjustments

### A. Unreported Income

In her notice of deficiency, respondent made adjustments increasing petitioner's gross income for 1986, 1987, and 1988 on account of certain unexplained bank deposits and cash transactions. Petitioner does not dispute that the bank deposits in question were made to accounts owned by him or that he received the cash items in question. He claims, however, that virtually all of those items were either loan repayments or redeposits of cash carried around by petitioner on his person and, thus, not items of gross income. We shall address the items in question year by year.

#### 1. 1986

During 1986, petitioner owned a bank account at North Fork Bank and Trust Co., Southampton, New York (North Fork), account No. 141568791 (the North Fork account). On the dates and in the amounts indicated, petitioner made the following deposits to the North Fork account:

| Date | Amount |
|------|--------|
| 5/15/86 | $5,800 |
| 8/25/86 | 900 |
| 10/21/86 | 3,000 |
| 10/29/86 | 5,000 |
| Total | $14,700 |

On April 21, 1986, petitioner also deposited a check in the amount of $3,000 to the North Fork account. That check is dated April 18, 1986, and was received from "John Ballis Racing Account".

"A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income." Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioner seeks to rebut the presumption of income that arises from the evidence of bank deposits by arguing that the deposits in question for 1986 were loan repayments or petitioner's own cash: (1) "The $14,700 in deposits to North Fork Bank represents loan repayments or redeposits of * * * [petitioner's] own cash." (2) "The $3,000 check from the John Baylis [sic] racing account is not unreported income but rather is a repayment of a loan by Mr. Baylis [sic]."

Petitioner has failed to persuade us that any of the 1986 deposits in question represent either loan repayments or redeposits. The only evidence that those deposits represent loan repayments or redeposits is petitioner's testimony to that effect. We did not, however, find petitioner to be a reliable witness. For example, with respect to the $900 deposited to the North Fork account on August 25, 1986, petitioner testified that he could not specifically remember that deposit but that he assumed that it was a partial repayment of $14,000 that he had lent to one Robert Libutti (Libutti) because "it was deposited

into my checking account."  With respect to a deposit of $5,400 made on January 30, 1987, to the North Fork account, petitioner testified that he could not remember whether it was a partial repayment of the $14,000 that he testified he lent to Libutti or a redeposit of a portion of the $5,800 that he had deposited on May 15, 1986, and then withdrew:  "The fact that it's deposited, as such, is indicative that it is from Mr. Libutty [sic]." Petitioner did not corroborate his testimony as to loan repayments with written evidence of any loans.  Moreover, he provided no supporting testimony; he neither called Libutti or John Ballis to testify nor showed that they were unavailable to testify.   If petitioner had made loans to them and received repayments from them in 1986, they could have testified to that effect.  We infer from their failure to testify that their testimony would have been negative to petitioner.  McKay v. Commissioner, 886 F.2d 1237, 1238 (9th Cir. 1989), affg. 89 T.C. 1063 (1987); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We accord no weight to petitioner's testimony that the 1986 deposits were either loan repayments or redeposits of petitioner's own cash.  Petitioner has failed to rebut the presumption that the 1986 deposits represented items of gross income.  Therefore, we sustain respondent's determination of a deficiency as it relates to such items.

2. <u>1987</u>

During 1987, petitioner continued to own the North Fork account. On the dates and in the amounts indicated, petitioner made the following deposits to the North Fork account:

| Date | Amount |
|------|--------|
| 1/30/87 | $5,400 |
| 3/17/87 | 1,004 |
| 3/24/87 | 1,700 |
| Total | 8,104 |

During 1987, petitioner owned a bank account at Astoria Federal Savings, Glen Cove, New York, account No. 651013169 (the Astoria account). On the dates and in the amounts indicated, petitioner made the following deposits to the Astoria account:

| Date | Amount |
|------|--------|
| 9/11/87 | $7,000 |
| 12/28/87 | 1,000 |
| Total | 8,000 |

On June 26, 1987, North Fork received $4,000 in cash from petitioner in partial consideration for the issuance of a cashier's check to petitioner.

On both June 23 and November 13, 1987, Trump Plaza Hotel and Casino, Atlantic City, New Jersey (Trump), received chips in the amount of $5,000 in partial repayment of a loan of $35,000 made to petitioner on October 5, 1986.

With respect to the deposit of $5,400 to the North Fork account on January 30, 1987, as related above, petitioner could

not remember whether that deposit was a partial repayment of the $14,000 that he testified that he lent to Libutti or a redeposit of a previous withdrawal. With respect to the deposit of $1,700 to the North Fork account on March 24, 1987, petitioner testified that he had no specific recollection of that deposit, although it could be another partial repayment from Libutti. With respect to the deposit of $1,004 to the North Fork account on March 17, 1987, petitioner testified that he had no recollection as to its nature. By his testimony, petitioner did not convince us that the 1987 North Fork deposits were either loan repayments or redeposits.

Petitioner has not directed us to any testimony (or other evidence) with respect to the source of the deposit of $7,000 to the Astoria account on September 11, 1987, or the payment of $4,000 to North Fork on June 26, 1987. Petitioner has failed to convince us that either item is either a loan repayment or a redeposit of a previously withdrawn sum.

Petitioner has convinced us, however, that the deposit of $1,000 to the Astoria account on December 28, 1987, is the redeposit of $1,000 withdrawn from the North Fork account, and we so find.

With respect to (1) all of the 1987 deposits to the North Fork account, (2) the September 11, 1987, deposit to the Astoria account, and (3) the June 26, 1987, payment to North Fork,

petitioner has failed to rebut the presumption that such items represented items of gross income. See <u>Tokarski v. Commissioner</u>, <u>supra</u> at 77. Therefore, we sustain respondent's determination of a deficiency as it relates to such items. We sustain no deficiency with respect to the deposit of $1,000 to the Astoria account on December 28, 1987.

Petitioner's position with respect to the June 23 and November 13, 1987, chip payments to Trump is unclear. In her notice of deficiency, respondent included those items as unreported income and described them as "Unexplained advances - Libutti". Petitioner testified that the chip payments, which repaid a loan made to petitioner by Trump, were made by Libutti. On brief, petitioner argues that the transactions do not evidence unreported income because there is no allegation of unreported gambling winnings. Petitioner's argument is somewhat beside the point. These are not items that result from a reconstruction of petitioner's income where there is no evidence that petitioner actually received anything during the period at issue. If this were such a situation, then petitioner might argue that, until respondent links petitioner to an income-producing activity, petitioner does not have the burden of proving he had no income. See <u>Llorente v. Commissioner</u>, 649 F.2d 152 (2d Cir. 1981), affg. in part, revg. in part, and remanding in part 74 T.C. 260 (1980) (we would follow <u>Llorente</u> because it is likely that any appeal in

this case will be to the Second Circuit Court of Appeals; see Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971)); Jackson v. Commissioner, 73 T.C. 394 (1979). This, however, is not a situation where there is no evidence of any receipts. Petitioner as much as concedes that Libutti paid a debt on his behalf. Moreover, there is no question that a taxpayer can realize income when another pays his debt. See, e.g., Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929) ("The discharge by a third person of an obligation to him is equivalent to receipt by the person taxed."). Respondent bears no burden here to show a taxable source for the payments made on petitioner's behalf by Libutti. Tokarski v. Commissioner, 87 T.C. at 76-77. Petitioner bears the burden of proving facts from which we could draw the conclusion that the payments in question did not constitute gross income to petitioner. That, petitioner has failed to do. Petitioner having failed to carry his burden of proof, we sustain respondent's determination to the extent attributable to the $10,000 in payments made to Trump by Libutti on petitioner's behalf.

   3. 1988

During 1986, petitioner owned a bank account at Chase Manhattan Bank, Roslyn, New York, account No. 061485 (the Chase account). On July 1, 1988, petitioner deposited to the Chase

account a check in the amount of $2,870 received from Cutlass
Reality Syndication (Cutlass).  The check is annotated: "For
Phone".

Petitioner testified that the check was to reimburse him for
having a cellular phone installed in an automobile purchased by
Cutlass, a customer of Rallye Motors.  Petitioner testified that,
in 1988, it was hard to find the specific type of phone that
Cutlass wanted, he knew where to get one, Cutlass gave him a
check for the approximate amount of the phone, and he got Cutlass
the phone.  Petitioner's testimony was uncorroborated.
Petitioner provided no receipt for his purchase of a phone, nor
did he provide any evidence of the work to install the phone.
Moreover, petitioner neither called anyone from Cutlass to
testify nor explained his failure to do so.  We infer from those
failures that any testimony from Cutlass would have been negative
to petitioner.  McKay v. Commissioner, 886 F.2d at 1238; Wichita
Terminal Elevator Co. v. Commissioner, 6 T.C. at 1165.
Petitioner has failed to prove that the $2,870 deposit to the
Chase account was a reimbursement for an amount expended on
account of Rallye, and we so find.  The deposit remains
unexplained and, thus, is an item of gross income to petitioner.
Tokarski v. Commissioner, 87 T.C. at 77.  Accordingly, we
sustain respondent's determination of a deficiency as it relates
to that item.

B.  Schedule A Deductions

    1.  1987

    a.  Interest

In her notice of deficiency, respondent included an adjustment disallowing an interest deduction in the amount of $726.  Although petitioner has assigned error with respect to that adjustment, petitioner has failed to address that adjustment on brief.  Therefore, we conclude that petitioner has abandoned the interest issue, and we sustain so much of respondent's determination as relates thereto.  See Bernstein v. Commissioner, 22 T.C. 1146, 1152 (1954) (holding against the taxpayer with respect to an issue because, among other things, the taxpayer did not press the issue on brief), affd. 230 F.2d 603 (2d Cir. 1956); Lime Cola Co. v. Commissioner, 22 T.C. 593, 606 (1954) ("Petitioners in their brief do not argue anything about * * * [the issue]; and, although they do not expressly abandon the issue * * * we presume they no longer press it.").

    b.  Contribution

In her notice of deficiency, respondent included an adjustment disallowing a charitable contribution deduction in the amount of $3,175.  That amount is reflected as a cash contribution on Schedule A, Itemized Deductions, attached to petitioner's Form 1040, U.S. Individual Income Tax Return 1987. Petitioner testified that he had no specific recollection of cash contributions except for change he put into a collection cup when

he purchased his morning coffee.  Petitioner has failed to convince us that he made a charitable contribution in cash of $3,175, or, indeed, that he made any charitable contributions of cash, during 1987.  Petitioner has failed to carry his burden of proof on this issue, and we sustain so much of respondent's determination as relates thereto.

  2. <u>1988</u>

   a. <u>Contribution</u>

  In her notice of deficiency, respondent included an adjustment disallowing a charitable contribution deduction in the amount of $2,760.  That amount is reflected as a cash contribution on Schedule A, Itemized Deductions, attached to petitioner's Form 1040, U.S. Individual Income Tax Return 1988.  Petitioner's testimony with respect to cash contributions was the same for 1988 as it was for 1987.  Petitioner has failed to convince us that he made a charitable contribution in cash of $2,760, or, indeed, that he made any charitable contributions of cash during 1988 beyond what, already, has been allowed by respondent.  Petitioner has failed to carry his burden of proof on this issue, and we sustain so much of respondent's determination as relates thereto.

   b. <u>Miscellaneous Deductions</u>

  In her notice of deficiency, respondent included an adjustment disallowing a miscellaneous deduction in the amount of $2,760.  Petitioner testified that, during his employment at

Rallye Motors, he incurred expenses incident to that employment for which he did not feel it was proper to claim reimbursement. Petitioner has provided no detail of any expenses he may have incurred. Petitioner has failed to convince us that, during 1988, he incurred any unreimbursed, business-related expenses. Petitioner has failed to carry his burden of proof on this issue, and we sustain so much of respondent's determination as relates thereto.

### 3. Schedule C Deductions

In her notice of deficiency, respondent included adjustments disallowing "Schedule C Expenses" for 1987 and 1988 in the amounts of $5,331 and $4,745, respectively. After taking into account concessions by the parties, only the following expenses remain in dispute:

|                          | 1987   | 1988   |
|--------------------------|--------|--------|
| Car & truck              | $687   | $815   |
| Dues                     | 185    | 122    |
| Office, rent & utilities | 1,651  | 1,691  |
| Supplies                 | 68     | 263    |

Those expenses were claimed by petitioner on Schedules C, Profit or Loss From Business, attached to petitioner's Forms 1040 for 1987 and 1988, respectively. Those Schedules C identify the trade or business in question as horse racing and breeding.

Respondent has allowed substantial amounts as deductions in connection with petitioner's horse racing and breeding business. Petitioner has not convinced us that he incurred deductible

expenses beyond what respondent already has allowed.  For instance, in support of the disputed car and truck expense for 1987, petitioner introduced into evidence a $300 invoice for the installation of a car phone in a new Mercedes automobile. Petitioner has failed to convince us that that expense did not have substantial, if not exclusive, personal attributes.  He has failed to convince us that his 1988 car and truck expense related to a vehicle used in his business.  Also, he has failed to provide any detail or supporting documents concerning the category "Office, Rent, & Utilities".  He testified that the category "Dues" included magazine subscriptions.  Petitioner has not proven that any of the disallowed expenses were incurred in connection with his business of horse racing and breeding. Accordingly, we sustain so much of respondent's determination as relates thereto.

III.  Disputed Additions to Tax

A.  Failure To File--1987

By her notice of deficiency, respondent determined an addition to tax against petitioner under section 6651(a)(1) for 1987.  Section 6651(a)(1) provides that, in the case of a failure to file an income tax return by the due date, there shall be imposed an addition to tax for such failure of 5 percent of the amount of tax, reduced by timely payments and credits under section 6651(b)(1), for each month or portion thereof during which the failure continues, not exceeding 25 percent in the

aggregate unless such failure is due to reasonable cause and not due to willful neglect.

Although petitioner assigned error to that determination, petitioner has failed to propose any findings of fact with respect thereto or advance any arguments in support of that assignment. Petitioner is a calender-year taxpayer. Petitioner's 1987 return was filed on July 6, 1988, which is prima facie untimely. See sec. 6072(a). Petitioner has failed to prove that his untimely return was due to reasonable cause and not due to willful neglect. Respondent's determination of an addition to tax under section 6651(a)(1) for 1987 is sustained.

B. <u>Negligence</u>

By her notice of deficiency, respondent determined additions to tax against petitioner for negligence for all of the years in issue. Section 6653(a) imposes one or more additions to tax where an underpayment of tax is due to negligence or intentional disregard of rules or regulations (hereafter, without distinction, negligence). Section 6653(a)(1), for returns due in 1989, and section 6653(a)(1)(A), for returns due in 1987 and 1988, impose an addition to tax equal to 5 percent of the entire underpayment if <u>any</u> portion of such underpayment is due to negligence. Section 6653(a)(1)(B), for returns due in 1987 and 1988, imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence. "Negligence is lack of

due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances."  Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)).

Although petitioner assigned error to respondent's determinations of additions to tax for negligence, petitioner has failed to propose any findings of fact with respect thereto or advance any persuasive arguments in support of that assignment. On brief, petitioner simply states:  "The statutory addition will apply only if Petitioner is shown to be negligent or in intentional disregard, and clearly that is not the case with Petitioner."  Petitioner has the burden of proving that he was not negligent.  Rule 142(a).  He has failed to carry that burden. Respondent's determinations of additions to tax under section 6653(a) are sustained, except to the extent necessary to reflect concessions or agreements of the parties.

C.  Substantial Understatement

By her notice of deficiency, respondent has determined additions to tax under section 6661 for all of the years in issue.  For returns due before January 1, 1990, section 6661 provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement. An understatement is "substantial" when the understatement for the taxable year exceeds the greater of (1) 10 percent of the tax

required to be shown or (2) $5,000. The understatement is reduced to the extent that the taxpayer has (1) adequately disclosed his or her position, or (2) has substantial authority for the tax treatment of an item. Sec. 6661; sec. 1.6661-6(a), Income Tax Regs.

Petitioner has averred no facts in support of his assignment that respondent erred in determining an addition to tax under section 6661. Moreover, on brief, petitioner makes no argument disputing respondent's section 6661 determinations except: "Petitioner believes that the understatement penalty will not apply when the understatement amount is recalculated." Because of concessions and settled issues, we cannot determine whether petitioner's understatements are substantial. We sustain respondent's determinations of additions to tax under section 6661 to the extent that petitioner's understatements are substantial. For no year has petitioner proven that he (1) adequately disclosed his position or (2) has substantial authority for the tax treatment of an item.

Decision will be entered

under Rule 155.