T.C. Memo. 2001-3

UNITED STATES TAX COURT

NORMAN E. DUQUETTE, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1933-98.               Filed January 8, 2001.

D, a consultant, carried on his consulting
business as an employee of P, a "C corporation".  D and
his wife were the sole shareholders and directors of P.
R disallowed various deductions claimed by P during its
1994 fiscal year and also determined that P was subject
to the sec. 6662, I.R.C., accuracy-related penalty.  P
alleged that R's notice of deficiency was invalid.
     1.  <u>Held</u>:  The notice of deficiency is valid.
     2.  <u>Held</u>, <u>further</u>, R's disallowance of various
deductions is sustained in substantial part.
     3.  <u>Held</u>, <u>further</u>, R's penalty against P for the
taxable year is sustained, in part, under sec. 6662,
I.R.C.

Norman E. Duquette (an officer), for petitioner.

<u>Alan R. Peregoy</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  By notice of deficiency dated November 20, 1997 (the notice), respondent determined a deficiency in petitioner's Federal income tax for its taxable year ended September 30, 1994 (the 1994 tax year), in the amount of $63,232 and an accuracy-related penalty in the amount of $12,646.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The parties have resolved certain issues, and issues remaining for decision are (1) the validity of the notice, (2) petitioner's entitlement to certain deductions for rent, depreciation, business meals, travel, supplies, and legal fees, and (3) the accuracy-related penalty.

Some facts have been stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  We need find few facts in addition to those stipulated and will not, therefore, separately set forth our findings of fact.  We will make additional findings of fact as we proceed.  Petitioner bears the burden of proof.  See Rule 142(a).

## Background

Petitioner is a Maryland corporation, organized on November 8, 1991. At the time of the petition, petitioner's mailing address was in Rockville, Maryland. During the period relevant to this case, petitioner was owned equally by Norman E. and Aline J. Duquette (together, the Duquettes; individually, Norman and Aline, respectively).

From 1968 until 1986, Norman was employed as an auditor by the Defense Contract Audit Agency (DCAA). In 1986, he left the employ of DCAA, and he opened a consulting business (the consulting business), offering advice to Government contractors in connection with their dealings with DCAA. Initially, Norman carried on the consulting business as a sole proprietorship. Norman's activities as a proprietor were subject to examination by respondent in May 1991. That examination led to a criminal investigation of Norman for tax crimes committed in connection with the sole proprietorship (the criminal investigation). The criminal investigation was resolved by Norman's pleading guilty to two counts of filing a false income tax return, for 1989 and 1990, in violation of section 7206(1). As a result of his guilty pleas, Norman paid a fine, but he did not serve a prison sentence.

In November 1991, Norman organized petitioner to carry on the consulting business. Norman testified that petitioner was

organized in order to encourage him to keep better records, so as to avoid further difficulties with respondent. Petitioner carried on the same business, with the same clients, as had Norman (as a proprietor). During the 1994 tax year, Norman and Aline were the only directors and officers of petitioner. Petitioner's Federal income tax return for the 1994 tax year (the 1994 tax return) shows gross receipts of $309,630.35 and taxable income of $1,178.30. On the 1994 tax return, petitioner claimed no deduction for salaries and wages but did claim a deduction for compensation of officers in the amount of $112,000, which amount was reported by the Duquettes, $100,000 by Norman and $12,000 by Aline, on the joint return of income that they made for 1994. Norman was employed by petitioner to provide consulting services to customers. Although Norman testified that petitioner employed part-time consultants, petitioner has failed to identify those individuals, and the 1994 tax return does not show any salary or wage paid to any such part-time consultants. We conclude, therefore, that, at least during the 1994 tax year, petitioner's sole business activity was offering Norman as a consultant.

The Duquettes were married in Rockville, Maryland, on February 4, 1988, and they were divorced in Florida in June 1996. They lived in Montgomery County, Maryland, until December 1991, when they moved to Dallas, Texas. In Dallas, they made their home in a condominium apartment located at 3510 Turtle Creek

Blvd. (the Dallas apartment or the apartment). The Dallas apartment was their home from December 1991 until April 18, 1994. In April 1994, the Duquettes relocated to Naples, Florida. Aline made her home there, and Norman visited her there until September 1994, after which, in substantial part because of marital difficulties, he did not return to Florida.

In May 1993, Norman began work for a Washington, D.C., law firm (the law firm) as an accounting consultant. The law firm treated Norman as an employee, issuing him a Form W-2, Wage and Tax Statement, for both 1993 and 1994. Those Forms W-2 show compensation of $52,060 and $155,372.50 for 1993 and 1994, respectively. During the 1994 tax year, Norman worked in Washington, D.C., on approximately 177 days. On those days, Norman resided in an apartment in Bethesda, Maryland (the Bethesda apartment).

## Discussion

### I. Validity of Notice

#### A. Assignments of Error

In the petition, petitioner assigns the following errors to respondent's determination of a deficiency:

> (a) The Commissioner issued an invalid notice of deficiency as the notice is not based on an actual deficiency determination. Further, the notice is invalid because the IRS did not examine the petitioner's tax return for the tax year ended September 30, 1994.

(b)  The notice of deficiency is arbitrary and erroneous, and is not based on any ligaments of fact. Moreover, the notice of deficiency amounts to a naked assessment without foundation whatsoever.

B.  <u>Facts</u>

Documents in evidence establish the following:  On October 27, 1997, Pat Grimes, a Revenue Agent employed by respondent, commenced an examination (the examination) of the 1994 tax return.  On that date, Revenue Agent Grimes sent to petitioner two letters and a request for documents.  The first letter informs petitioner that the 1994 tax return has been assigned to Revenue Agent Grimes for examination.  It also states that she needs additional information to verify certain items on that return.  The request for documents (document request) contains a specific and comprehensive list of documents, including documents substantiating the following items with respect to the 1994 tax year:

1.  Year end wages accrued but not paid to shareholder
2.  Supplies
3.  Professional Services
4.  Rent expense
5.  Automobile expenses and depreciation
    Travel expenses:
    a.  Meal expenses
    b.  Hotel expenses
    c.  Airplane tickets

The second letter informs petitioner that the limitation period for the assessing of additional tax for the 1994 tax year will expire soon, encloses a Form 872, Consent to Extend the Time to Assess Tax (Form 872), and requests that petitioner sign and

return the Form 872.  In pertinent part, the Form 872 states: "The amount of any Federal Income tax due on any return(s) made by or for the above taxpayer(s) for the period ended September 30, 1994, may be assessed any time before December 31, 1998."  Petitioner did not return the Form 872 or respond to the document request.  Instead, petitioner attempted to negotiate restrictions to be incorporated into the Form 872.  Revenue Agent Grimes and her supervisors refused to restrict the Form 872 and, on November 20, 1997, no Form 872 having been received by respondent, the notice was issued.  By letter dated December 8, 1997, Stephen P. Taylor, Chief, Exam Branch V (apparently, a supervisor of Revenue Agent Grimes), explained respondent's failure to restrict the Form 872:  "Conditions required under the Internal Revenue Manual were not met.  We do not restrict statutes or the scope of an examination prior to initiating the examination."

Other documents in evidence establish the following:  On October 27, 1997 (the date the examination commenced), Revenue Agent Grimes was examining petitioner's income tax returns for the 2 taxable years preceding 1994 (the preceding years' examination).  She completed the preceding years' examination on November 6, 1997.  On that date, petitioner was sent a copy of the resulting report (the report).  The report shows adjustments with respect to the following items:

Accrued wages to related party
Rents
Auto/truck expense
Depreciation
Supplies-office
Legal & professional fees
Meals & entertainment
Hotel expenses

In negotiating with respect to the Form 872, petitioner attempted to have the Form 872 restricted so that petitioner would consent to waive the time to assess tax only with respect to tax attributable to items similar to those giving rise to adjustments in the report. As stated, respondent's agents would not agree to such restriction.

The notice is addressed to petitioner, references the 1994 tax year, determines the deficiency in income tax and penalty described above, and, with additional explanations, sets forth the following adjustments to income giving rise to such deficiency:

a. Interest income
b. Compensation of officers
c. Rents
d. Depreciation
e. Other deductions

The category "Other Deductions" (other deductions) is particularized as follows:

Business meals
Travel
Supplies
Professional fees

C.  Discussion

    1.  Validity of Notice

Petitioner claims that the notice is invalid because respondent failed to determine a deficiency in petitioner's income tax or examine its return.

Section 6212(a) authorizes the Secretary to send a notice of deficiency in respect of certain taxes, including the income tax. We have jurisdiction to redetermine deficiencies determined by the Secretary.  See sec. 6214(a).  A valid notice of deficiency has been described as the "ticket to the Tax Court".  E.g., Baron v. Commissioner, 71 T.C. 1028, 1034 (1979).  Petitioner directs us to Scar v. Commissioner, 814 F.2d 1363 (9th Cir, 1987), revg. 81 T.C. 855 (1983).  In Scar, the Court of Appeals for the Ninth Circuit considered a notice of deficiency that, on its face, revealed that no determination of a deficiency had been made with respect to the taxpayers in question for the year in question.  See id. at 1370.  The Court of Appeals held that such a notice was invalid and the petition contesting such notice should have been dismissed in the taxpayers' favor for lack of jurisdiction.  See id.  Commenting on Scar, we have held:  "Where the notice of deficiency does not reveal on its face that the Commissioner failed to make a determination, a presumption arises that there was a deficiency determination."  Campbell v. Commissioner, 90 T.C. 110, 113 (1988).

We have examined the notice and, on its face, it does not reveal that respondent failed to make a determination: It is addressed to petitioner, references the 1994 tax year, states both that respondent has determined a deficiency in petitioner's tax for that year and the amount of that deficiency, and sets forth the adjustments (and explanations of those adjustments) giving rise to such determination. Petitioner has failed to rebut the resulting presumption that respondent did determine a deficiency in petitioner's income tax for the 1994 tax year. Indeed, the presumption is borne out by evidence in the record. The adjustments in the notice are similar to the adjustments resulting from the preceding years' examination. No doubt, Revenue Agent Grimes, being responsible for examination of all 3 years, determined that petitioner was subject to adjustments for the 1994 tax year similar to those for the preceding 2 years. The particularity of the document request, to which petitioner made no response, and the content of the correspondence from Norman, negotiating on behalf of petitioner with respect to the Form 872, make clear that, prior to the date of the notice, Revenue Agent Grimes had examined petitioner's return for the 1994 tax year and determined that, barring a satisfactory explanation from petitioner of the items in question, similar adjustments were called for. Prior to the notice, respondent (acting through his agent) had determined a deficiency in

petitioner's tax for the 1994 tax year.  Petitioner has failed to show the invalidity of the notice.

### 2.  Claim of Arbitrariness

Petitioner claims that the notice is arbitrary and erroneous, and amounts to nothing more than a naked assessment, without foundation.  We assume that petitioner wishes to invoke the rule of Helvering v. Taylor, 293 U.S. 507 (1935).  The rule of Helvering v. Taylor, may be simply put:  A court is given sufficient cause to set aside respondent's determination of a deficiency if it is shown to the court that such determination was arbitrarily made.  See id.  We need engage in no extended discussion of that rule.  The record adequately demonstrates that respondent's determination of a deficiency was based on the similarity of the 1994 tax return to petitioner's returns for the preceding 2 years (for which respondent found cause for adjustments) and petitioner's failure to comply with the document request and consent to an extension of time to assess tax. Simply put, respondent did not act arbitrarily, but with cause.[1]

---

[1]  On brief, petitioner argues that respondent acted arbitrarily in not agreeing to a restricted Form 872, requiring petitioner to consent to waive the time to assess tax only with respect to tax attributable to items similar to those giving rise to adjustments for the preceding 2 years.  Respondent's explanation is that it is against policy to agree to restricted consents until an examination is completed.  While we do not find that policy arbitrary (quite to the contrary), we fail to see how here, at least, respondent's refusal to agree to a restricted consent makes respondent's determination of a deficiency
(continued...)

Respondent did not make a naked assessment.  The rule of
<u>Helvering v. Taylor</u> is not properly invoked in this case.

II.  <u>Rental Expenses</u>

    A.  <u>Introduction</u>

On the 1994 tax return, petitioner deducted $32,244.12 for
rents paid (the deduction for rents).  By the notice, respondent
disallowed the deduction for rents, explaining that petitioner
had failed to establish that the amount deducted constituted an
ordinary and necessary business expense, was expended, or was
expended for the purpose designated.  The parties have stipulated
that the deduction for rents represents three separate amounts,
as follows:

```
$7,540 - Rent for space in the Dallas apartment
13,994 - Bethesda apartment expenses
10,710 - Florida expenses
32,244 - Total
```

    B.  <u>Dallas Apartment</u>

        1.  <u>Facts</u>

As stated, the Duquettes made their home in the Dallas
apartment from December 1991 until April 1994.  On February 8,
1992, the board of directors of petitioner (sometimes, the board)
resolved that petitioner's offices be transferred from Maryland

---

[1](...continued)
arbitrary and erroneous.  The adjustments in the notice appear to
reflect in substantial part the scope of the examination of the
1994 tax year communicated by Revenue Agent Grimes to petitioner
and forming the basis of Norman's request for a restricted
consent.

to Texas and petitioner's address be the address of the Dallas

apartment, effective January 1, 1992.  The board also resolved:

> The rental expense for the Corporation offices in
> Dallas, Texas shall not exceed $1,500.00 per month.
> The actual rental shall be the association maintenance
> fees charged by the Claridge Association to the
> residents of 3510 Turtle Creek Blvd.  All additional
> charges including the acquisition of the unit, property
> taxes, insurance, and telephone expense shall be borne
> personally by Norman E. Duquette and shall not be
> charged to the Corporation.

Norman prepared a document headed "COMPUTATION OF FAIR RENTAL[,]

OFFICE AT 3510 TURTLE CREEK BLVD.[,] DALLAS, TEXAS" (the

computation document).  Among the entries on the computation

document is the following:

```
1.  Square Footage Proration
    a.  Business Use                625 square feet
    b.  Total Square Footage      2,500 square feet
    c.  Percentage Business          25 percent
```

The computation document also has entries entitled "Annual

Expenses", "Prorated Expenses", "Unique Business Expenses", and

"Total Business Expenses".  The amount shown as "Total Business

Expenses" is $12,919.29.  The computation document states:  "The

corporation will pay the association fees of $11,477.16 as fair

rental for the office in home.  This is less than the $12,919.29

calculated * * * [as "Total Business Expenses"]."

The parties have stipulated that the $7,540 deducted by

petitioner as rent for space in the Dallas apartment (the Dallas

apartment amount) represents condominium fees with respect to the

Dallas apartment of approximately $1,000 a month from September 1993 until April 1994.

### 2. Section 162(a)(3)

In pertinent part, section 162(a)(3) provides:

There shall be allowed as a deduction [in computing taxable income] all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including--

* * * * * * *

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

### 3. Arguments of The Parties

Petitioner argues: "The rental of minimum office space at a reasonable cost in a major revenue producing location is clearly an ordinary and necessary expense."

Respondent argues:

[T]he evidence shows that * * * [petitioner's] payment of Norman Duquette's condominium fees for the Texas home was merely the payment of the Duquette's personal living expenses. * * * [petitioner's] payment of such condominium fees is a constructive dividend to Norman Duquette. It was not an ordinary and necessary business expense for * * * [petitioner] to pay the condominium fees for the Duquette's home. Therefore, the expense must be disallowed.

### 4. Discussion

In Greenspon v. Commissioner, 23 T.C. 138 (1954), we dealt with a corporation taking deductions for expenditures on the home of its dominant stockholder and chief executive officer. We

said: "In such circumstances, the proof should be very clear and very certain that the expenses charged to the corporation were legitimate business expenses of the corporation. Otherwise, the opportunity for abuse would be great." Id. at 151. In Place v. Commissioner, 17 T.C. 199 (1951), affd. per curiam 199 F.2d 373 (6th Cir. 1952), we dealt with a taxpayer claiming a deduction for rentals paid his wife for the use of her property in a manufacturing concern owned and operated by him. The Commissioner argued that the rentals were excessive. We stated:

> The basic question is not whether these sums claimed as a rental deduction were reasonable in amount but rather whether they were in fact rent instead of something else paid under the guise of rent. The inquiry is whether the petitioner was in fact and at law "required" to pay these sums as rent. See * * * [predecessor of sec. 162(a)(3)]. When there is a close relationship between lessor and lessee and in addition there is no arm's length dealing between them, an inquiry into what constitutes reasonable rental is necessary to determine whether the sum paid is in excess of what the lessee would have been required to pay had he dealt at arm's length with a stranger. * * *

Id. at 203.

In 1994, there was a close relationship between the Duquettes and petitioner. The Duquettes were the sole owners of petitioner, which was, in effect, Norman's one-man corporation. That close relationship gives us reason to question whether their dealings were at arm's length, and petitioner has failed to show

any reason why they would (or did) deal at arm's length.[2] Further, petitioner has failed to prove that the Dallas apartment amount was a reasonable rental for the use that petitioner obtained of the apartment.

In short, petitioner has failed to substantiate its claim that 25 percent of the apartment was for business use. There is no plan of the apartment in evidence showing any dedication of a portion of the apartment to business use, nor did petitioner testify as to such dedication. Moreover, the apartment was the Duquettes' home, and petitioner has failed to show that the apartment was any larger than the Duquettes needed for domestic purposes or that they were in any way discommoded on account of Norman's carrying out petitioner's business on the premises. Norman testified that a considerable amount of his work for petitioner is done by telephone and fax, and that, in the apartment, as in other places, he did research and wrote reports.

---

[2] Congress has expressed skepticism that lease transactions between employers and employees are negotiated at arm's length: Sec. 280A(c)(6) provides that no home office deduction is allowable to an employee who leases a portion of his home to his employer. The reports of the tax writing committees that preceded the addition of sec. 280A(c)(6) to the Code state the doubt of such committees that lease transactions between an employer and employee are generally negotiated at arm's length. See H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 1, 133-134; S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 1, 83. Both of those reports accompanied H.R. 3838, 99th Cong., 1st Sess. (1985) (H.R. 3838). H.R. 3838 was enacted as the Tax Reform Act of 1986 (TRA 86), Pub. L. 99-514, 100 Stat. 2404. Sec. 280A(c)(6) constituted sec. 143(b) of TRA 86.

There is no evidence that petitioner had to maintain an extensive library or extensive files for Norman to do his work, or that Norman required a dedicated area in which actually to write his reports. There is no substantiation of Norman's claim: "The Dallas office was used about 10 days a month to deal with clients". Petitioner has failed to convince us that any use of the apartment by Norman to further petitioner's business was more than incidental to the Duquette's use of the apartment as a home. Assuming such incidental use, petitioner has failed to show that there was even a market from which to determine what a reasonable rental would be for such incidental use.

Petitioner has failed to prove that it was required to pay the Dallas apartment rental amount as a condition to the continued use or possession of a portion of the apartment. Consistent with the lack of evidence that petitioner's use of the apartment was anything more than incidental to the Duquettes' use of the apartment as their home is the conclusion that, if the Dallas apartment amount was paid to or for the benefit of the Duquettes, such payment was not made for business purposes but to distribute to them, as owners of the corporation, profits or funds unnecessary for business operations. Petitioner has failed to prove that such payment was an ordinary and necessary expense paid or incurred during the 1994 tax year in carrying on petitioner's trade or business.

### 5. Conclusion

We shall sustain respondent's determination of a deficiency to the extent it is based on a disallowance of a deduction for the Dallas apartment rental amount.

### C. Florida Expenses

#### 1. Facts

The parties have stipulated that, in April 1994, the Duquettes relocated to Naples, Florida. A property settlement agreement entered into by them in connection with their divorce recites that they "lived and cohabited as Husband and Wife until on or about April 1994". The Duquettes were married during all of calendar year 1994, and they filed a joint Federal income tax return for that year (the joint return). The joint return is signed by Norman and is dated March 13, 1995. Attached to the joint return is a form reporting the sale of the Dallas apartment. That form recites that, on July 25, 1994, Aline had purchased a replacement residence and that Norman "will do so within the two year period [permitted for tax free replacement of a principal residence]". From April 1994, until September 30, 1994 (the last day of the 1994 tax year), Norman's presence in Florida was sporadic. He testified: "When I went down there in May and June, I helped her [Aline] look for places." Apparently, Aline was staying in temporary lodgings. Norman testified that he spent time with Aline in such temporary lodging. He testified

that, as of September 1994, primarily because of marital difficulties, he had no reason to return to Florida.

Petitioner claimed a deduction for rent in the amount of $10,710 on account of the reimbursement of Norman for expenses incurred from April 22, 1994, through September 30, 1994, as follows (the Florida expenses):

| | |
|---|---|
| $8,732.50 | rent for April-September and application fee |
| 97.12 | phone |
| 150.00 | home inspection |
| 513.40 | utilities |
| 1,202.50 | furniture storage |
| [3]10,695.52 | Total |

### 2. Arguments of the Parties

Petitioner argues that the Florida expenses relate to the relocation of its corporate office from the Dallas apartment to Florida in April 1994 and the continued use of a home in Florida as a corporate office for the balance of the 1994 tax year. In support of that argument, petitioner states: There were many large Government contractors within a 200-mile radius of Naples, Florida; its Texas client base was diminishing; and it was able to secure a large client (Honeywell Corp.) shortly after the Duquettes arrived in Florida. Petitioner points to a resolution of the board deciding to relocate the corporate headquarters from Texas to Florida. Respondent asks us to find that the relocation

---

[3] The sum of the stipulated individual items is $10,695.52. There is no explanation of the $14.48 difference between this number and the stipulated total expenses of $10,710.

to Florida was tied in with the Duquettes' separation, she to Florida, he to Washington. Based upon that proposed finding respondent argues that the relocation and living expenses associated with that relocation were personal expenses of the Duquettes, the reimbursement of which constituted a nondeductible constructive dividend.

### 3. Discussion

We agree with respondent. Petitioner is not clear on the grounds for his deduction of the Florida expenses. To the extent that petitioner claims a deduction for the Florida expenses under section 162(a)(3), as rentals, petitioner has failed to substantiate the business use of any rental property. We deny such a deduction for reasons similar to those we set forth with respect to the Dallas apartment amount. To the extent that petitioner otherwise claims a business purpose for the reimbursement of the Florida expenses, we find that such reimbursement was made principally to serve the personal needs of the Duquettes, in connection with the breakup of their marriage, and only incidentally for any purpose associated with petitioner.

Petitioner has failed to prove that the reimbursement of the Florida expense was an ordinary and necessary expense paid or incurred during the 1994 tax year in carrying on petitioner's trade or business.

### 4. Conclusion

We shall sustain respondent's determination of a deficiency to the extent based on a disallowance of a deduction for reimbursement of the Florida expenses.

### D. The Bethesda Apartment Expenses

#### 1. Facts

At the meeting of the board on February 8, 1992, in addition to resolving that petitioner's offices be transferred to Texas, the board resolved:

> The corporation will maintain a Corporate apartment in Maryland to serve as a Resident Agent address as required by Maryland law. The corporate apartment will also be used by employees of the Corporation when traveling to the Washington area on Corporation business.

On the 1994 tax return, petitioner claimed a deduction with respect to the Bethesda apartment as follows (the Bethesda apartment expenses):

| | |
|---|---|
| $9,540 | monthly rent of $795 paid to owner |
| 805 | maid service |
| 1,300 | cable TV |
| 15 | parking fee |
| 43 | Pepco |
| 19 | newspaper |
| 1,294 | telephone |
| 897 | answering service |
| 80 | misc. credit card charge |
| [4]13,993 | Total |

---

[4] Here again there is no explanation of the discrepancy (in this case, $1) between the sum of the individual items and the stipulated total of $13,994. Presumably, the $1 was lost in rounding one or more of the items to the nearest dollar.

2. <u>Sections 162(a)(2) and 274(d)(1)</u>

In pertinent part, section 162(a)(2) provides:

There shall be allowed as a deduction [in computing
taxable income] all the ordinary and necessary expenses
paid or incurred during the taxable year in carrying on
any trade or business, including--

\*     \*     \*     \*     \*     \*     \*

(2) traveling expenses (including amounts expended
for meals and lodging other than amounts which are
lavish or extravagant under the circumstances)
while away from home in the pursuit of a trade or
business \* \* \*

Section 274(d)(1) provides that no deduction shall be
allowed pursuant to the provisions of section 162 for traveling
expenses, including meals and lodging, unless the taxpayer
substantiates "by adequate records or by sufficient
evidence corroborating the taxpayer's own statement" the specific
time, place, and amount of the claimed expenditures, as well as
the business purpose of the expense.  Section 274(d)(1) is
applicable to corporate as well as individual taxpayers.  See
<u>Group Admin. Premium Serv., Inc. v. Commissioner</u>, T.C. Memo.
1996-451; <u>Rosenthal Chiropractic Offices, Inc. v. Commissioner</u>,
T.C. Memo. 1993-331.

3. <u>Arguments of the Parties</u>

Petitioner argues:  "In FY 94 [the 1994 tax year], the
apartment was used for business for approximately 177 days."

"This is an ordinary and necessary expense clearly deductible under IRC sections 161 and 162."[5]

Respondent argues that the Bethesda apartment was Norman's tax home for the 1994 tax year and, therefore, when he was there, he was not "away from home", so as to allow a deduction pursuant to section 162(a)(2). Respondent argues that the Bethesda apartment expenses were personal living expenses provided by petitioner to Norman and, therefore, additional nondeductible constructive dividends.

4. Discussion

A corporation may deduct its costs for the travel of its employees on the business of the corporation. See, e.g., Avon Mills v. Commissioner, 7 B.T.A. 143, 146 (1927). Among the conditions that must be satisfied before a deduction for traveling expenses may be taken under section 162(a)(2) is that the expense is incurred in pursuit of business. See Commissioner v. Flowers, 326 U.S. 465, 470 (1946) (interpreting section 23(a)(1)(A) of the 1939 Code, the precursor to section 162(a)(2)). In Flowers, the taxpayer, an employee of a railroad, resided in Jackson, Mississippi. His principal post of business was in Mobile, Alabama, and he attempted to deduct as traveling

---

[5] Sec. 161 provides: "In computing taxable income under section 63, there shall be allowed as deductions the items specified in this part, subject to the exceptions provided in part IX (sec. 261 and following, relating to items not deductible)."

expenses the costs he incurred in making trips from Jackson to Mobile and his expenditures for meals and hotel rooms while in Mobile. See id. at 468-469. With respect to the pursuit-of-business condition, in the context of the facts before it in Flowers, the Supreme Court said:

> This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

Id. at 470. The Supreme Court dismissed almost summarily any claim that the expenses in question had been incurred in pursuit of the business of the corporation. See id. at 473. The Court found that the expenses were no different in kind than the commuting expenses incurred by employees residing in proximity to their post of duty. See id. Such local commuting expenses the Court characterized as "living and personal expenses lacking the necessary direct relation to the prosecution of the [employer's] business." Id. The Court found that the taxpayer's added costs of a long-distance commute "were as unnecessary and inappropriate to the development of the railroad's business". Id. The railroad, the Court stated, did not require the taxpayer to travel on business from Jackson to Mobile or to maintain living quarters in both cities: "It simply asked him to be at his principal post in Mobile as business demanded and as his personal convenience was served". Id. The Court concluded:

Travel expenses in pursuit of business within the meaning of * * * [sec. 162(a)(2)] could arise only when the railroad's business forced the taxpayer to travel and to live temporarily at some place other than Mobile, thereby advancing the interests of the railroad. Business trips are to be identified in relation to business demands and the traveler's business headquarters. The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors. * * *

Id. at 474.

We must determine whether the exigencies of petitioner's business rather than the personal conveniences and necessities of Norman motivated his travel to the Washington, D.C., area, in order to determine whether any or all of the Bethesda apartment expenses are traveling expenses deductible by petitioner. There is no doubt that petitioner had business in the Washington area. That business included providing Norman's services to the law firm, which treated Norman as an employee. Taking together Norman's testimony, the fact that the income from the law firm varied from year to year, and our belief that petitioner reported that income on its own return, we are prepared to give petitioner the benefit of the doubt, and we find that Norman was not an employee of the law firm (but that petitioner did business with the law firm, selling its consulting services provided by Norman, petitioner's employee). To determine whether the exigencies of petitioner's business brought Norman to Washington, we must determine whether Washington was Norman's principal post of duty.

We find that it was not, at least through April 18, 1994; it was, at least through April 18, 1994, a minor post of duty.

We have considered a list of petitioner's customers, and the receipts that each generated, for the 1994 tax year and the preceding and following years. Those customers are located all over the country, and, even though the law firm provided over one-half of petitioner's receipts for the 1994 tax year, that was not true for either the preceding or following year. We give credit to Norman's testimony that, in 1991, when the Duquettes moved to Dallas, major business opportunities for petitioner existed there. We also give credit to his testimony that, by April 18, 1994, when the Duquettes sold the Dallas apartment, petitioner's Texas business was in decline. We, therefore, find that Norman's principal post of duty was in Dallas, Texas, during the 1994 tax year, until April 18, 1994, when the Duquettes moved from Dallas. Petitioner has failed to prove that, from April 18, 1994, until the end of the 1994 tax year, Norman's major post of duty was other than in the Washington, D.C., area.

Petitioner has convinced us that rental of the Bethesda apartment was an economical alternative to the cost of hotels, when Norman traveled to Washington on petitioner's business. Petitioner has also substantiated the fact of the Bethesda apartment expenses by adequate records, principally canceled checks. We are satisfied as to the business purpose associated

with the rental of the Bethesda apartment by the action of the board, authorizing the rental of a corporate apartment, and the use of the Bethesda apartment by Norman on the 177 days during the 1994 tax year that he worked in Washington. Therefore, we find that petitioner incurred, and has adequately substantiated, traveling expenses on account of the travel of Norman to Washington, in an amount equal to that portion of the Bethesda apartment expenses incurred on or before April 18, 1994.

### 5. Conclusion

We shall sustain respondent's determination of a deficiency to the extent based on a disallowance of a deduction for the Bethesda apartment expenses only to the extent of such expenses incurred after April 18, 1994.

## III. Travel Expenses

On the 1994 tax return, under the heading "Other Deductions", petitioner deducted $45,937.83 for "Travel". Respondent disallowed all "other deductions" on the grounds "that it has not been established that any amount claimed constitutes an ordinary and necessary business expense, was expended or was expended for the purpose designated."

We may dispose of this item without much discussion. The parties have stipulated to a "meal analysis" and a "travel analysis" prepared by petitioner, which analyses (the analyses) contain details of the travel expenses (travel expenses) claimed

by petitioner). The parties also have stipulated that many of the travel expenses were reimbursed by payment from petitioner's customers directly to Norman. Respondent argues: "[Petitioner] is not entitled to a deduction for the travel expenses because they were all reimbursed." Petitioner agrees that travel expenses were reimbursed to Norman, but claims that all such reimbursements were included in petitioner's gross income. Petitioner points to a stipulated exhibit, a copy of a cash receipts journal for petitioner prepared by Norman, which, petitioner claims, supports its claim that all such reimbursement were included in gross income. Petitioner has not, however, tied the entries in the cash receipts journal to the line one amount, $309,630.25, "Gross receipts or sales", on the 1994 return. Nevertheless, we find that all reimbursements were included in gross income. We think that such finding is a fair inference from the substantial amount of gross receipts or sales reported on the 1994 tax return, the cash receipts journal, and is implicit in Norman's testimony that petitioner reported all reimbursements. Respondent offered no proof to rebut that inference.

Respondent also argues that petitioner has failed to substantiate the business purpose of the travel expenses, as required by section 274(d)(1). See sec. 1.274-5T(c)(2)(ii)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46018 (Nov. 6, 1985).

The travel expenses set forth in the analyses are supported by other stipulated exhibits, including canceled checks, copies of credit card statements, and a daily diary kept by Norman, which corroborates the list of miscellaneous expenses for parking, tolls, taxis, gasoline, tips, etc., set forth in one of the analyses. We find that those exhibits, plus the parties' stipulation and Norman's testimony (not disputed by respondent) that virtually all of the travel expenses associated with visits to business clients that are listed on the analyses were reimbursed by such clients, constitute adequate substantiation of the amounts, time and place, and business purpose of such expenses as required by section 274(d) and the regulations. Travel expenses incurred in connection with the trips to Florida, which we have found to be personal trips, and all travel expenses incurred by Norman in the Washington, D.C., area after April 18, 1994 (not shown to be other than commuting expenses), are not included within that finding on the ground that such expenses do not constitute expenses associated with business travel while away from home as required by section 162(a)(2).

Based upon the foregoing criteria, we find that petitioner incurred deductible travel expenses for the 1994 tax year in the amount of $30,958.

IV.  Business Meals

    A.  Introduction

    On the 1994 tax return, under the heading other deductions, petitioner deducted $16,070.60 for "Business Meals" (business meals).  On brief, petitioner concedes a portion of the adjustment for business meals, arguing for a deduction of $14,777, divided as follows:

| | |
|---|---|
| Per diems - Aline Duquette | $6,440 |
| Per diems - Norman Duquette | 10,010 |
| Business meals with clients | 1,711 |
| Board of directors meetings | 310 |
| Total | 18,471 |

    Deductible business meals (80 percent)[6] $14,777

    We may also dispose of this item without much discussion. Respondent argues lack of substantiation, failure to report reimbursements, and duplication of certain expenses.  Petitioner supports the deduction with the analyses and other stipulated documents.  For the same reason as set forth supra, in section III, we find that all reimbursements were included in gross income.

    B.  Per Diems - Aline Duquette

    We allow no deduction with respect to the $6,440 claimed as business meals for "Per diems - Aline Duquette".  Petitioner argues that it paid Aline per diem of $35 a day for 184 days

---

    [6]  With exceptions not here pertinent, sec. 274(n)(1) provides that any deduction for food or beverages shall not exceed 80 percent of such expense.

($6,440), while she was "in a travel status", related to her relocation to Florida. Petitioner's policy was to pay a per diem amount for meals rather than reimbursing an employee's actual meal expenses, if the employee so elected. As set forth supra in section II.D.2, section 162(a)(2) permits a deduction for traveling expenses (including amounts expended for meals) while away from home in the pursuit of business. Aline's duties for petitioner are vaguely described at best. Her marriage to Norman was in trouble in April 1994, and, we believe, she moved to Florida for personal reasons. Petitioner has failed to prove that the expenses incident to her relocation to Florida were incurred in pursuit of its business, rather than pursuant to Aline's relocation to Florida for personal reasons. On that basis, we allow no deduction.

C.  Per Diems – Norman Duquette

We allow a deduction of $3,409 with respect to the $10,010 claimed as business meals for "Per diems – Norman Duquette". Petitioner claims that it paid Norman per diem of $35 a day for 286 days ($10,010), while he was "in a travel status". We believe that, to a limited extent, such per diem payments were legitimate traveling expenses (for meals) incurred by petitioner with respect to travel by Norman while away from home in pursuit of the business of petitioner. During the 1994 tax year, through April 18, 1994, Norman's principal post of duty was in Dallas,

Texas. See supra sec. II.D.4. During that period, Norman was in a travel status with respect to petitioner when he traveled away from Dallas in pursuit of petitioner's business. The analyses show per diem payments to Norman for various dates (e.g., "11/3 – 11/5; 11/29 – 12/17) through April 18, 1994. We accept that Norman was traveling on behalf of petitioner, away from Dallas, on all dates through April 18, 1994, for which per diem payments are shown (all as reflected in the analyses and supporting documents).[7] Per diem payments for such travel are deductible by petitioner. After April 18, 1994, Dallas no longer was Norman's principal post of duty, see section III.D.4., and Norman has failed to prove that his principal post of duty was other than Washington, D.C., where he worked for 177 days during the 1994 tax year. See id. The analyses show per diem payments to Norman for every day from April 19, 1994, through the end of the 1994 tax year (the remainder of the year). Petitioner has failed to prove that Norman was in a travel status on every day during the remainder of the year. Nevertheless, the analyses and certain supporting documents allow us to determine that petitioner was outside of the Washington, D.C., area on petitioner's business on

---

[7] Petitioner's payment of per diem to Norman and petitioner's reimbursement of his miscellaneous travel expenses is evidenced by copies of canceled checks issued to Norman, which contain notations that they represent expense reimbursements. Also, respondent did not object to the amount of the per diem ($35 a day). Therefore, we do not consider the amount to be in issue.

some days during the remainder of the tax year and, on those days, incurred expenses for meals.

Based upon the foregoing discussion, we find that, for the 1994 tax year, petitioner incurred deductible traveling expenses (for meals), under the heading:  Per diems – Norman Duquette, in the amount of $3,409 (80% x $4,261).

D.  Business Meals With Clients

We allow no deduction with respect to the $1,711 claimed as "Business meals with clients" (client meals).  On brief, in its discussion of client meals, petitioner merely directs us to the analyses and other stipulated documents.  We have examined those exhibits and are unable to identify the charges that constitute the client meals.  Moreover, with respect to the group of charges that might contain the charges for client meals, petitioner has failed to comply with the substantiation requirements of section 1.274-5T(b)(3), Temporary Income Tax Regs., governing entertainment of clients.  Petitioner has presented no evidence concerning the specific "business reason" for the meals, the "nature of business derived or expected to be derived as a result of the [meals]", or (with few exceptions) the "business relationship" of the person or persons entertained by Mr. Duquette.  See sec. 1.274-5T(b)(3)(iv) and (v), Temporary Income Tax Regs.  We, therefore, deny any deduction for the charges for client meals.

E.  Board of Director's Meetings

We allow no deduction with respect to the $310 claimed for "Board of Directors Meetings" (board meals).  As stated, during the 1994 tax year, the Duquettes were petitioner's only directors.  On January 1 and February 1, 1994, the Duquettes met, as directors, to discuss corporate matters (the January 1 meeting and the February 1 meeting, respectively).  The January 1 meeting took place at a restaurant called "The Mansion at Turtle Creek", and the February 1 meeting took place at a restaurant called "The Riviera".  The charge for dinner at the first restaurant was $162 and the charge for dinner at the second restaurant was $148.  Petitioner claimed a deduction for both dinners ($310).  The minutes of the January 1 meeting show that the sole substantive purpose of that meeting was to approve payment for the Duquettes' prior trips to Naples, Florida, and the decision "to relocate the corporation to Naples".  The minutes of the February 1 meeting show that the purpose of that meeting was to hear Mr. Duquette's report of petitioner's earnings as of December 31, 1993, and to approve Mr. Duquette's consultation with an attorney "regarding some tax issues".  (See the discussion of those attorney's fees, infra.)  There is no evidence that these matters actually required significant discussion or, in light of Norman's absolute control of all aspects of petitioner's business, any action other than the preparation and signing of the minutes by Norman as

petitioner's secretary.  Petitioner has failed to show any business necessity for it to spend anything (much less $310) for two meals for two persons so that the Duquettes, who were married, lived together, and, as petitioner would have it, worked together, could discuss the affairs of Norman's one-man corporation.  See Moss v. Commissioner, 758 F.2d 211, 213 (7th Cir. 1985), affg. 80 T.C. 1073 (1983); see also Dugan v. Commissioner, T.C. Memo. 1998-373.

V.  Automobile Depreciation

On the 1994 tax return, petitioner deducted depreciation of $2,550, which it explained as being with respect to an automobile placed in service on June 17, 1992, costing $15,884, used 100 percent for business, and driven 12,000 miles on business during the 1994 tax year (the automobile).  Respondent disallowed that deduction, explaining that petitioner had failed to establish the cost of the automobile, that it was depreciable, and that it was used in a trade or business.

On brief, petitioner claims:

The company car was driven 12,000 business miles in FY94 which included a househunting trip from Dallas to Naples [Florida] in December 1993, a one way trip to Florida in April 1994 incident to the relocation, and a trip from Dallas to Phoenix in January 1994 for consulting.  * * *  These three trips account for 6,100 of the 12,000 business miles in FY 94.  The balance of the business miles (5,900) is an average of 113 miles per week for travel to business meetings, post office, banks, and other incidental business activity.

The parties have stipulated a copy of a purchase agreement for a 1992 Honda, dated June 13, 1992, at a price of $17,184 ("Unpaid balance * * * $15,884")[8], and showing co-purchasers: petitioner and Norman.

Section 167(a)(1) allows a depreciation deduction with respect to property used in a trade or business. Section 274(d)(4) requires substantiation of various items with respect to any deduction for property such as the automobile.

We have already concluded that petitioner failed to prove that the expenses incident to Aline's relocation to Florida were incurred in pursuit of its business. See supra sec. IV.b. We assume that the mileage described by petitioner for house hunting in, and relocation to, Florida were incident to Aline's relocation there. Any mileage associated with such relocation is not business mileage. In addition there is no evidence to support petitioner's statement that 5,900 miles were attributable to incidental business activity. Petitioner points to an exhibit headed "Car Mileage", which Norman testified was an annual analysis of business usage of petitioner-owned automobiles made at the end of each of petitioner's taxable years. For the 1994 tax year, the entries merely indicate that the automobile was

---

[8] Petitioner has furnished no explanation for its use of $15,884, rather than the $17,184 purchase price, as the depreciable cost basis for the automobile.

driven 12,905 total miles without any breakout of business miles that would justify a depreciation deduction for that year.

Only the business purpose of the trip to Phoenix is adequately substantiated by (1) a copy of the expense report submitted to the law firm, (2) the travel expense analysis prepared by Norman, which lists the cost of that trip as one of Norman's travel expenses for the audit year, and (3) the parties' stipulation that all travel expenses that pertain to clients of the law firm were reimbursed in full by that firm (which we assume that petitioner included in gross income). The expense report submitted by Norman to the law firm states that the round trip covered 2,160 miles, which is 16.7 percent of the total mileage (12,905 miles) for the 1994 tax year.

Because we find that the percentage of business use of the auto during the audit year was less than 50 percent, depreciation for the year is limited to straight line over a 5-year period, as opposed to declining balance over a 3-year period as shown on the Form 4562, Depreciation and Amortization, attached to the 1994 return. See secs. 280F(b)(1), 168(g)(2)(A) and (3)(D). Depreciation is deductible only to the extent of business use. D'Angelo Associates, Inc. v. Commissioner, 70 T.C. 121, 138 (1978); L&L Marine Serv. Inc. v. Commissioner, T.C. Memo. 1987-428. Therefore, the correct automobile depreciation deduction

for the audit year is $531 determined as follows:  16.7% x

$15,884 (the original cost of the auto) x 20%.

VI.  Supplies

On the 1994 tax return, under the heading "Other

Deductions", petitioner deducted $8,900.50 for "Supplies"

(supplies).  Of that amount, $2,765 remains in dispute.[9]  The

remaining amount claimed for supplies is as follows:

|  |  |  |
|---|---|---|
| (1) | Safe deposit box | $30 |
| (2) | Registry of motor vehicles | 498 |
| (3) | Condo application fee | 100 |
| (4) | Furniture storage | 730 |
| (5) | Office decorations | 300 |
| (6) | FOIA request | 488 |
| (7) | Entertainment | 247 |
| (8) | Auto insurance | 149 |
| (9) | Life insurance | 90 |
| (10) | Medical bills | 133 |
|  | Total | 2,765 |

Items (1)-(4) represent costs associated with Aline's

relocation from Dallas to Florida.  We find that petitioner's

payment of those costs, like its payment of other costs

associated with Aline's relocation, was not in connection with

petitioner's business.

Item (5), office decorations, also represents a personal

benefit to the Duquettes, based upon our finding, supra sec. II.B

_____

[9]  A portion of this difference is attributable to
petitioner's concession prior to trial, that many of the
reimbursements for so-called supplies charged to American Express
by Norman related to nondeductible personal items.

and C., that neither the Dallas apartment nor the Florida residence qualified as business premises of petitioner's.

Petitioner's description of item (6), its request under the Freedom of Information Act (FOIA) "for tax information", does not reveal whether the request related to respondent's examination of petitioner, of Norman, or to the criminal proceeding instituted against Norman (discussed infra).  As a result, petitioner has not shown that that expense provided any business benefit to petitioner.

Petitioner states that item (7), entertainment, represents the cost of five "shows" at the Kennedy Center in Washington, D.C.:  Three attended by Norman and "a part-time consultant to the petitioner" and two attended by Norman and employees of "a major client".

Entertainment expenses are deductible to the extent that they are (1) "directly related to" the "active conduct of the taxpayer's trade or business" or  (2) "associated with" the active conduct of such trade or business, and the entertainment directly preceded or followed "a substantial and bona fide business discussion".  Sec. 274(a)(1)(A).  In this case, the entertainment was not "directly related entertainment" as defined in section 1.274-2(c), Income Tax Regs.  See sec. 1.274-2(c)(7)(ii)(a), Income Tax Regs.  Also, it does not qualify as "associated" entertainment because petitioner has failed to offer

any evidence as to the existence or nature of any bona fide business discussion either before or after the entertainment. See sec. 1.274-2(d)(3), Income Tax Regs., sec. 1.274-5T(b)(3)(iv) and (b)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985). Therefore, the entertainment expense is nondeductible.

Item (8), the cost of insurance for the automobile, was incurred on May 28, 1994, more than 4 months after the Dallas-Phoenix round trip, the only demonstrated business use of the auto during the audit year. Because there is no evidence that the $297 payment of automobile insurance was attributable to other than periods of personal use of the auto during the 1994 tax year, we find that no portion of this payment constitutes a deductible expense under section 162(a).

Petitioner argues that item (9), a premium for life insurance on Norman's life, was purchased pursuant to a company plan or policy adopted on February 6, 1992, by Norman acting in his capacity as petitioner's president (the plan). The plan provided for "[l]ife insurance offered through American Express on the life of * * * [Norman]", and was limited to life insurance "covering accidents while traveling". There is no evidence as to the amount of the insurance in question. Apparently, the proceeds of the policy were payable to petitioner: "The proceeds from the policy will be used to effect an orderly business

transition in the event Mr. Duquette is no longer available to lead the company." Those are just words; they fail to establish any corporate need for insurance should Norman's death deprive his one-man corporation of his services. Cf. <u>Whipple Chrysler-Plymouth v. Commissioner</u>, T.C. Memo. 1972-55.

The plan also provided a self-insured medical benefit consisting of "[p]ayment of Medical Expenses up to a maximum of $2,000 per year, per employee." That language is the basis for item (10), the $133 deduction for "medical bills". We find that, even though it covered only the two shareholder employees, the Duquettes, the plan qualified as a medical benefit plan under section 105(b), see section 1.105-5(a), Income Tax Regs., and that petitioner is entitled to deduct any medical expense payments made under the plan. <u>Seidel v. Commissioner</u>, T.C. Memo. 1971-238; see sec. 1.162-10(a), Income Tax Regs. Norman's American Express bills covering the 1994 tax year (all of which were paid by petitioner) show a $25 dentist bill and a $108 charge for prescription drugs. However, the January 16, 1994, American Express statement shows both a charge and a credit for the $108, and Norman's payment was reduced by the amount of such credit. We, therefore, find that petitioner is entitled only to a $25 deduction for medical expense reimbursements under the plan.

VII.  Legal Fees

On the 1994 tax return, under the heading other deductions, petitioner deducted $57,862.03 for "Professional Fees". Remaining in dispute is the amount of $33,842 paid by petitioner to a law firm in Washington, D.C. (the legal fees), for representation of Norman in connection with the criminal investigation.  Petitioner argues that payment of the legal fees is deductible as an ordinary and necessary expense of petitioner's incurred in its business because an unfavorable result to the criminal investigation "would have destroyed petitioner's ability to remain in business by depriving the Petitioner of its key employee."  Respondent argues that petitioner's payment of Norman's legal fees was a constructive dividend to Norman.

The issue presented herein is identical to that recently considered by this Court in Hood v. Commissioner, 115 T.C. 172 (2000).  Hood concerned the deductibility of legal fees paid by a corporation on behalf of its sole shareholder and key, indispensable employee in connection with his indictment for criminal tax evasion relating to his operation of the same business prior to incorporation.  In Hood, we held that the corporation's payment of legal fees constituted a nondeductible constructive dividend on the ground that the shareholder-employee, not the corporation, primarily benefited from such

payment.  We found that, in <u>Hood</u>, the shareholder "had the wherewithal to pay the legal fees associated with his criminal defense."  We found that "while the incarceration of Mr. Hood might have caused * * * [the corporation] to cease operations, petitioners have not shown that * * * [the corporations's] failure to pay the legal fees would have led to Mr. Hood's incarceration."  <u>Id.</u> at 181-182.

There is no evidence in this case to contradict that Norman, like Mr. Hood, was financially capable of paying the legal fees associated with his criminal defense.  In both cases, the benefit to the shareholder ("free legal representation for which * * * [the shareholder] would otherwise have to pay to avoid incarceration and/or a felony conviction") outweighed any benefit to the corporation making the payment.  <u>Id.</u> at 181.

We, therefore, find that petitioner's payment of the legal fees was primarily for Norman's, not petitioner's, benefit and, therefore, is nondeductible by petitioner.

VIII.  <u>Accuracy-Related Penalty</u>

Respondent determined a 20-percent accuracy-related penalty under section 6662(a) and (b)(1) on account of negligence or

intentional disregard of rules or regulations.[10] Petitioner assigns error to respondent's determination.

In the case of an underpayment of tax required to be shown on a return, section 6662(a) and (b)(1) imposes a penalty in the amount of 20 percent of the portion of the underpayment that is attributable to negligence or intentional disregard of the rules or regulations (hereafter, simply, negligence). Negligence has been defined as lack of due care or failure to do what a reasonable and prudent person would do under like circumstances. E.g., Hofstetter v. Commissioner, 98 T.C. 695, 704 (1992). Negligence includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs. Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment if it is shown that the taxpayer acted in good faith and that there was reasonable cause for the underpayment. The determination of whether a taxpayer acted in good faith and with reasonable cause is made on a case-by-case basis, taking into account all pertinent facts and

---

[10] In his notice of deficiency, respondent also seeks to impose the penalty on the ground that there was a substantial understatement of tax under sec. 6662(b)(2). On brief, however, respondent has not pursued that argument. We, therefore, consider him to have abandoned it. See Bernstein v. Commissioner, 22 T.C. 1146, 1152 (1954), affd. 230 F.2d 603 (2d Cir. 1956); Lime Cola Co. v. Commissioner, 22 T.C. 593, 606 (1954); Roberts v. Commissioner, T.C. Memo. 1996-225.

circumstances. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of * * * law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner bears the burden of proving facts showing good faith and reasonable cause. See Rule 142(a).

Petitioner defends against respondent's determination of a penalty for negligence by claiming: "Petitioner has maintained comprehensive records and had a reasonable basis for all aspects of the tax return." Petitioner concedes that Norman has passed the examination to be a certified public accountant. Respondent argues that "[petitioner] intentionally disregarded rules prohibiting deductions for personal items and deducted items for which it had been reimbursed." Respondent also argues that petitioner failed to keep adequate records under sections 6001 and 274(d).

To the extent we have sustained respondent's adjustments, we have done so principally because petitioner has failed to show that its deductions represented expenses incurred in carrying on petitioner's business, rather than expenses incurred to benefit the Duquettes, personally. With respect to such deductions, it appears to us that Norman believed that, if he produced corporate resolutions and policies authorizing such expenses, no further

consideration was necessary as to whether the expense really benefited petitioner. Respondent's adjustments raise few questions of law. They raise questions of fact; indeed, of judgment. Norman exercised poor judgment. He had been a Government auditor, and he had passed his C.P.A. exams. Undoubtedly, he understood that he wore more than one hat with respect to his corporation, as shareholder, director, and employee, and that an expenditure to benefit a shareholder directly is not a deductible corporate expense. There is ample evidence that Norman abused his dual status, exploiting his director and employee roles in order to shortchange the tax collector; for example, by deducting dinners at expensive restaurants to discuss with his wife matters over which he had complete control or deducting as corporate relocation expenses personal costs incident to his divorce and his wife's relocation to Florida. See also supra note 8, in which we report Norman's concession that he billed petitioner for personal expenditures. Also, contrary to petitioner's claim, it did not keep adequate and full records. Except as stated in the next paragraph, petitioner has failed to convince us that it did not act negligently with respect to any of the adjustments it here contests.

Petitioner has not argued that the negligence penalty should not be sustained for adjustments that petitioner conceded. We

sustain the negligence penalty for the whole of petitioner's underpayment in tax other than that portion of the underpayment arising from respondent's disallowance of the legal fees, since petitioner's reporting position regarding the deductibility of legal fees was consistent with our holding in <u>Jack's Maintenance Contractor's, Inc. v. Commissioner</u>, T.C. Memo. 1981-349, revd. per curiam 703 F.2d 154 (5th Cir. 1983), which we overruled in <u>Hood v. Commissioner</u>, 115 T.C. 172 (2000).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.