T.C. Memo. 1998-128

UNITED STATES TAX COURT

RANDY L. AND JULIE J. WYSONG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22527-96.                    Filed April 1, 1998.

<u>Jess A. Bahs</u> and <u>Frank M. Polasky</u>, for petitioners.

<u>Elizabeth Patino</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  In a notice of deficiency dated July 19, 1996, respondent determined deficiencies in petitioners' Federal income tax for 1992 and 1993 in the amounts of $28,507 and $13,643, respectively.  The deficiencies stem from the disallowance of rent paid by Wysong Medical Corp. (Wysong Medical), a subchapter S corporation, to Wysong Corp., a subchapter C corporation, and a

corresponding increase in the amount of flow-through income from Wysong Medical to petitioners.

We must decide whether petitioners' share of ordinary income from Wysong Medical should be increased by the amounts of $85,587 and $42,750 in 1992 and 1993, respectively. Our answer to this question rests on whether amounts paid as rent by Wysong Medical to Wysong Corp. represented ordinary and necessary expenditures under section 162(a)(3). We answer this question in the negative and thereby hold that petitioners' share of ordinary income should be increased by the stated amounts. Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and exhibits submitted therewith are incorporated herein by this reference. Petitioners, husband and wife, resided in Midland, Michigan, when they petitioned the Court. They filed timely joint 1992 and 1993 Federal income tax returns.

Petitioners own a commercial building (the Eastman Building) located in Midland, Michigan. The Eastman Building currently contains a total of 25,196 square feet, consisting of 15,400 square feet of warehouse space, 3,500 square feet of office area,

and 6,296 square feet of office-work area.  The 25,196 square feet includes an addition which was made after the years in issue and which increased the warehouse section of the building by approximately twofold.  On petitioners' 1992 and 1993 tax returns, the Eastman Building's total asset cost was identified at $403,400.

Randy L. Wysong (Dr. Wysong) is a doctor of veterinary medicine.  In the early 1980's, he purchased all the stock of Vet-Med Health Products, a company in the business of nutritional products designed for veterinary clinical use.  Dr. Wysong subsequently changed the name of the company to Wysong Medical.  Prior to 1992, Wysong Medical conducted research and development activities and manufacturing and marketing activities.  Also prior to 1992, Wysong Medical leased the Eastman Building from petitioners for an amount and under terms not disclosed by the record, and it owned all the personal property in the Eastman Building.

Due, in part, to liability concerns, Dr. Wysong decided to separate research and development activities from manufacturing and marketing activities.  To accomplish this end, Dr. Wysong, in or around 1991, founded Wysong Corp. to market products developed by Wysong Medical.[1]  Dr. Wysong is Wysong Corp.'s sole

---

[1]  Wysong Corp. also manufactures a limited amount of these products.

shareholder. Following Wysong Corp.'s incorporation, Wysong Medical was dedicated to research and development activities consisting of developing food supplements for animals and people, designing medical and surgical equipment, and designing athletic and fitness equipment. Except for filling a few invoice orders carried over from 1991, beginning in January 1992, Wysong Medical performed strictly research and development activities during the years in issue. Its sole client was Wysong Corp.

Petitioners instigated a series of transactions in order to shift liabilities and assets away from Wysong Medical to Wysong Corp. On January 1, 1992, petitioners leased the Eastman Building and the underlying property to Wysong Corp. for a period of 10 years. Both petitioners signed the lease agreement as lessors, and Dr. Wysong signed as lessee in his capacity as president of Wysong Corp. Under the terms of the lease agreement, Wysong Corp. was obligated to pay petitioners monthly rent of $9,085, $4,800 per month to Dr. Wysong, and $4,285 per month to Julie Wysong, for an annual total of $109,020. During 1992 and 1993, Wysong Corp. paid petitioners rent in the amounts of $132,842 and $131,520, respectively.[2]

On December 31, 1991, prior to Wysong Corp.'s finalizing its lease agreement with petitioners, Wysong Corp. leased space in

---

[2] The record does not disclose the reason for the disparity in the rent provided by the lease agreement and the rent actually paid by Wysong Corp.

the Eastman Building to Wysong Medical for the 1992 calendar year. In pertinent part, the 1992 lease agreement provides:

> Wysong Corporation party of the first part and Wysong Medical Corporation party of the second part, [hereby agree that] * * * The said party of the first part, in consideration of the rents and covenants herein specified hereby Let and Lease to the said party of the second part the following described premises, situated and being in the township of Larkin, County of Midland, and State of Michigan, to-wit: 1880 N. Eastman Road, Midland, Michigan * * * 500 square foot annual fee - $92,087 for the term of one year from and after the 1st day of January, 1992 * * *.

Wysong Corp. and Wysong Medical executed a second lease agreement on December 31, 1992, for the 1993 calendar year. The 1993 lease agreement contains identical terms except that it limits the square footage leased by Wysong Medical to 250 square feet and reduces Wysong Medical's rent to $46,000. Dr. Wysong signed the 1992 and 1993 lease agreements as both the lessor and the lessee.

On January 1, 1992, Wysong Medical sold all its assets to Wysong Corp. for $89,293. Wysong Medical received Wysong Corp.'s promissory note in the amount of $89,293 with interest at 8 percent per annum. Out of the $89,293 purchase price, $33,138 was allocated to equipment sold; the remainder to stock in trade and all other unidentified assets. The price breakdown for the equipment sold is as follows:

| Equipment | Sales Price |
|---|---|
| 1986 Dodge Caravan | $1,875 |
| Mita copier | 4,251 |
| IBM computer system | 17,506 |
| Furniture & fixtures | 9,506 |

Total                                        33,138

After this sale, Wysong Corp. owned and operated all the equipment, furniture, and fixtures in the Eastman Building.  Both corporations operated out of the Eastman Building under the following arrangement: Wysong Corp. paid Wysong Medical for its research and development activities conducted on behalf of Wysong Corp., and pursuant to the lease agreements, Wysong Medical paid Wysong Corp. for the use of the latter's facilities.  Also, all employees of Wysong Medical became employees of Wysong Corp.

On Wysong Medical's 1992 and 1993 tax returns, it deducted rent paid to Wysong Corp. in the amounts of $92,087 and $46,000, respectively.  Wysong Medical also deducted on these returns "other deductions" of $91,502 and $52,207: in 1992, "other deductions" include $1,000 for legal and accounting costs, $70,000 in commissions, $9,000 for equipment rental, $43 in fees, $3,386 for auto/travel, $7,913 for utilities, and $160 for refunds; in 1993, "other deductions" include $218 in fees, $48,309 in contract work, and $3,680 for utilities.

In the notice of deficiency, respondent determined that the amounts claimed as rent deductions by Wysong Medical exceeded reasonable amounts for rent within the meaning of section 162(a)(3).  Using the square footage identified in the lease agreements, respondent computed Wysong Medical's allowable rent deduction at $13 per square foot (500 times $13; 250 times $13).

Based on these amounts, respondent determined that reasonable amounts for Wysong Medical to pay for the use and occupancy of the leased property were $6,500 and $3,250 in 1992 and 1993, respectively.

OPINION

We must decide whether amounts paid as rent by Wysong Medical to Wysong Corp. represented ordinary and necessary expenditures under section 162(a)(3). Deductions are a matter of legislative grace, and petitioners bear the burden of showing that they are entitled to the deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934).

Section 162(a)(3) allows a deduction for all ordinary and necessary business expenses, including rent required to be paid as a condition for the use of property.[3] Inherent in the phrase "ordinary and necessary" is an element of reasonableness, and, where the lessor and lessee are closely related and there is no arm's-length dealing between them, an inquiry into what constitutes reasonable rent is necessary to determine whether the sums paid exceed what the lessee would have paid in an arm's-

---

[3] Sec. 162(a)(3) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

length transaction with an unrelated party.  See <u>Southeastern Canteen Co. v. Commissioner</u>, 410 F.2d 615, 619 (6th Cir. 1969), affg. in part and revg. in part T.C. Memo. 1967-183; <u>Place v. Commissioner</u>, 17 T.C. 199, 203 (1951), affd. per curiam 199 F.2d 373 (6th Cir. 1952); see also <u>Maschmeyer's Nursery, Inc. v. Commissioner</u>, T.C. Memo. 1996-78.  The close relationship in the present case is evident.  Dr. Wysong was the sole shareholder of both corporations, and whatever negotiations took place were between Dr. Wysong and himself.  Furthermore, Dr. Wysong signed the lease agreements on behalf of both the lessor and the lessee.  The entire record supports the fact that there were no arm's-length negotiations between the two entities.  We closely scrutinize related party transactions, and to the extent that rent paid by a lessee to a related lessor is excessive, a rental deduction will be disallowed.  The question of whether rental payments are reasonable is one of fact.  Many factors may be considered, such as the terms and conditions of the lease and the facts and circumstances surrounding the signing of the lease. See <u>Audano v. United States</u>, 428 F.2d 251, 256 (5th Cir. 1970); <u>Commissioner v. Lincoln Elec. Co.</u>, 176 F.2d 815, 817 (6th Cir. 1949); see also <u>Alondra Indus., Ltd. v. Commissioner</u>, T.C. Memo. 1996-32.  No one factor is dispositive.

Petitioners argue that the claimed rent was reasonable because the parties to the lease agreements intended to convey

additional property and services to Wysong Medical that were not explicitly mentioned in the lease agreements.  First, petitioners argue that there was a mistake in the 1992 and 1993 lease agreements; that the parties did not intend to limit Wysong Medical's use of the Eastman Building to the square footage identified in the agreements and that in fact Wysong Medical's use of the Eastman Building was not so limited.  Petitioners contend that during 1992 Wysong Medical used approximately one-half of the Eastman Building for its research and development activities, and, given the Eastman Building's square footage subsequent to the warehouse expansion (approximately 25,000 square feet) and respondent's determination that $13 a square foot was reasonable rent, the rent paid by Wysong Medical was significantly less than the $162,500 fair rental value (25,000 divided by 2, times $13).  Petitioners argue alternatively that one-half of the original building size, approximately 13,500 square feet divided by 2, still establishes that the rent paid by Wysong Medical during 1992 was reasonable to the extent of $87,750 (6,750 times $13).  Petitioners reduce the aforementioned calculations by half for 1993 to reflect a claimed 50-percent decrease in Wysong Medical's research and development activities for that year.

Second, petitioners argue that the amount of rent was reasonable in light of the fact that Wysong Corp. furnished

Wysong Medical with additional equipment and services not specified in the lease agreements. According to petitioners, the lease agreements do not embody the entire agreement between the two entities. In addition to the physical space, petitioners contend that Wysong Medical's rent payments included a premium for: access to or use of Wysong Corp.'s equipment and employees; and costs incurred on behalf of Wysong Medical by Wysong Corp. for phone systems, computer systems, freight expenses, printing expenses, fitness equipment, kitchen facilities, and inventory used by Wysong Medical in its research and development activities.

Respondent argues that the lease agreements speak for themselves. Alternatively, respondent argues that even if Wysong Medical used additional space not reflected in the lease agreements petitioners failed to establish that the rental rate was reasonable. For example, petitioners failed to adduce evidence which establishes when the Eastman Building's addition was completed and hence the square footage of the Eastman Building during the years in issue.

Respondent also attacks petitioners' second argument that the parties to the lease agreements intended for the lease to cover additional equipment and services. Among other things, respondent argues that Wysong Medical had no business purpose for the sale and leaseback of its equipment and that the transaction

lacked economic reality. According to respondent, because there was no business purpose behind the asset sale, the transaction should be ignored for tax purposes and Wysong Medical retains an equity interest in the assets. Hence, respondent contends that no deduction is allowed under section 162 for any part of the rent payment earmarked for Wysong Medical's use of the aforementioned equipment. See sec. 162(a)(3).

We sustain respondent's position as to the amounts allowable as deductions for rent. We entertained, at great length, petitioners' evidence of Wysong Medical's and Wysong Corp.'s intent to convey to Wysong Medical the right to use more than the square footage identified in the lease agreements. We remain unconvinced, however, that petitioners or the two corporations intended to enter into an agreement other than the one evidenced by the leases. The leases are clear and unambiguous. Dr. Wysong had unfettered control over the final terms embodied in the leases, and he signed both agreements in his capacity as the sole shareholder of both the lessor and lessee corporations. We are also unpersuaded that Wysong Medical used more of the Eastman Building than it was allowed under the terms of the leases, or that the addition to the Eastman Building's warehouse was completed during the years in issue. Petitioners' 1992 and 1993 tax returns identify the Eastman Building's total asset cost as $403,400. If petitioners had incurred construction expenses in

1992 or 1993, it would have increased the Eastman Building's total asset cost in 1993.

We also reject petitioners' second argument that the rent was reasonable because the parties intended for Wysong Medical to reimburse Wysong Corp. for additional equipment and services provided by the latter.  Assuming that there was in fact a legitimate business purpose for the sale of Wysong Medical's assets to Wysong Corp., and that the transaction may be recognized for tax purposes, Southeastern Canteen Co. v. Commissioner, 410 F.2d 619; Carroll v. Commissioner, T.C. Memo. 1978-173, Wysong Medical's other deductions are inconsistent with petitioners' argument.  If the rent established by the 1992 and 1993 lease agreements included a premium for the use of equipment, then why did Wysong Medical take a $9,000 deduction in 1992 for equipment rental?  Petitioners offered no explanation.  Also, in 1992 and 1993, Wysong Medical deducted $7,913 and $3,680, respectively, for utilities expenses paid.  Jill Hubbard (Ms. Hubbard), who began working for Wysong Medical in 1986 and continued on with Wysong Corp. in the capacity of office manager and bookkeeper, testified that Wysong Medical paid $7,913 to Wysong Corp. to reimburse the latter for a percentage of the utilities bills it paid.  Again, petitioners failed to explain why Wysong Medical made separate payments to reimburse Wysong Corp. for utilities payments made on Wysong Medical's behalf if

Wysong Medical's share of the utilities was factored into its rent payment. And finally, in 1992 and 1993, Wysong Medical deducted $70,000 and $48,309, respectively, for "commissions" and "contract work" expenses. Ms. Hubbard testified that the $70,000 deduction for "commissions" was for contract labor performed by employees of Wysong Corp. This undercuts petitioners' argument that Wysong Medical's rent payments included a premium for the use of Wysong Corp.'s employees. Petitioners further argue that the rent payment included a premium for access to, and not the use of, Wysong Corp.'s employees. This argument lacks merit. It is well-settled law that a deduction claimed for rent is only allowable where the payment is actually made for rent and not for something else in the guise of rent. Mackinac Island Carriage Tours, Inc. v. Commissioner, 419 F.2d 1103, 1105 (6th Cir. 1970); Place v. Commissioner, 17 T.C. at 203; American Metal Prods. Corp. v. Commissioner, 34 T.C. 89, 105 (1960), affd. 287 F.2d 860 (8th Cir. 1961) ("To the extent * * * [payments were not made for rent], such payments would not be ordinary and necessary and therefore would not be deductible as rental expenses").

Rejecting petitioners' arguments as to square footage, property, and services not identified in the lease agreements, we now turn to the parties' remaining arguments for and against the reasonableness of the rent. Neither party presented expert testimony to establish the fair rental value of the leased

property.  Among other things, petitioners argue that the reasonableness of Wysong Medical's rent is evidenced by the proportionally similar income and losses reported by both the lessor and the lessee.  For example, in 1992, Wysong Medical's total deductions represented approximately 101 percent of its gross income, whereas Wysong Corp.'s total deductions represented approximately 99 percent of its gross income.  Petitioners contend that this balancing of income and losses was done by design, and that this proportionality establishes that there was no improper shifting of income.

Respondent argues that Wysong Medical's payments were not reasonable in light of all the facts and circumstances.  First, and using the square footage identified in the lease agreements, respondent argues that parties in an arm's-length transaction would not have agreed to rent office space at $184 per square foot when the prevailing rate in the area was $13 per square foot.  Second, respondent argues that the amount of rent paid by Wysong Medical was not reasonable in relation to the business activities of the two corporations.  In 1992 and 1993, Wysong Medical's gross receipts were $147,341 and $100,537, respectively; whereas Wysong Corp.'s gross receipts were $2,436,888 and $2,666,759 in 1992 and 1993, respectively.  Yet, the amount of rent paid by Wysong Medical represented 69 percent and 35 percent of the total rent paid by Wysong Corp. in 1992 and

1993, respectively.  According to respondent, it was not reasonable for Wysong Medical to pay such portions of the rent. Third, respondent argues that Wysong Medical's payments to Wysong Corp. were made as a means of shifting income with the end effect being a decrease in the amount of flow-through income from Wysong Medical, an S corporation, to its sole shareholder Dr. Wysong.

We are not satisfied that the amount of rent paid by Wysong Medical was reasonable, in other words, that a lessee in an arm's-length transaction with an unrelated party would have paid the amount of rent that Wysong Medical was required to pay under the lease agreements.  We reject petitioners' argument that the corporations' proportionally similar income and losses for the years in issue demonstrates that there was no improper shifting of income and that the amount of rent paid by Wysong Medical was reasonable.  We believe that the relevant inquiry focuses not only on the effect that these deductions had on the two corporations but also on the effect that the deductions had on the S corporation's sole shareholder, Dr. Wysong.

Furthermore, we find that Wysong Medical's rent payments were not reasonable in relation to the corporations' business activities.  In 1992 and 1993, Wysong Corp. had gross income in the amounts of $2,436,888 and $2,666,759, respectively, and made rent payments to petitioners in the amounts of $132,842 and $131,520.  The rent payments were approximately 5.5 percent and

4.9 percent of Wysong Corp.'s gross income.  In comparison, in 1992 and 1993, Wysong Medical had gross income in the amounts of $147,341 and $100,537, respectively, and paid rent to Wysong Corp. in the amounts of $92,087 and $46,000.  Wysong Medical's rent payments were approximately 49.7 percent and 45.8 percent of its gross income.  We also note that petitioners made no attempt to determine the fair rental value of the property prior to Wysong Medical and Wysong Corp.'s entering into the lease agreements; petitioners did not consult with a real estate appraiser to determine fair rental rates in the area, and they did not investigate the rental rates of comparable properties.

In conclusion, we find that Wysong Medical's rent payments were excessive for purposes of section 162(a)(3). Accordingly, we sustain respondent's determination on this issue. The excess rent payments do not constitute rent that Wysong Medical was required to pay for the continued use and possession of the property in question, for purposes of its trade or business, and are therefore not deductible.

We have considered all other arguments made by the parties and found them to be either irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.