# United States Tax Court

T.C. Memo. 2024-76

GREGORY R. SCHNACKEL AND LAURA B. SCHNACKEL,
Petitioners
v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 5560-18.                                    Filed July 29, 2024.

————

*John M. Lingelbach*, for petitioner Gregory Schnackel.

*Edward D. Hotz* and *Howard N. Kaplan*, for petitioner Laura Schnackel.

*Britton G. Wilson*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, *Chief Judge*: With respect to petitioners' federal income tax for 2012, 2013, and 2014 (years at issue), respondent determined deficiencies of $244,965, $100,550, and $98,002, respectively, and accuracy-related penalties under section 6662 of $44,993, $20,110, and $19,600, respectively. Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners timely filed a joint Petition seeking redetermination of the deficiencies for the years at issue. Before trial the Court granted petitioner wife's Motion for Leave to File a Separate Amended Petition. Petitioner husband opposed this Motion. In her Amended Petition, petitioner wife raised innocent spouse relief pursuant to section 6015 as

[*2] an affirmative defense.  Petitioner wife did not specify under which subsection of section 6015 she seeks relief.  Respondent did not issue a notice of determination regarding innocent spouse relief.  At the start of the trial, respondent conceded that petitioner wife was eligible for innocent spouse relief.  Petitioner husband continued his objection to petitioner wife's receiving this relief.

After concessions,[1] we consider whether (1) Schnackel Engineers, Inc. (SEI), is entitled to deduct rental expenses relating to a New York condominium as a business expense; (2) SEI is entitled to depreciation deductions under section 167 or 179 for personal property placed in the condominium and a Range Rover automobile; (3) petitioners' net operating loss (NOL) deduction for 2011 carried over from 2010 must be reduced by $399,179; (4) petitioners are entitled to an NOL carryforward from 2011 for 2012; (5) petitioners are liable for accuracy-related penalties for the years at issue; and (6) petitioner wife is entitled to innocent spouse relief for the years at issue.  Underlying the first four issues is whether petitioners accurately reported petitioner husband's distributive share of income, gain, and loss from SEI from 2011 through 2014.

FINDINGS OF FACT

Some of the facts are stipulated and so found.  The Stipulation of Facts and the attached Exhibits are incorporated herein by this reference.  Petitioners resided in Nebraska when they timely filed their Petition.

Petitioners were married on May 25, 1985, and filed joint federal income tax returns for the years at issue.  On July 27, 2016, petitioner wife filed a complaint for dissolution of marriage with the district court

---

[1] Pursuant to the Stipulation of Settled Issues, the parties agree that (1) petitioner wife failed to report $4,076 in long-term capital gain income for 2011, (2) petitioners failed to report $215 in long-term capital gain income, $450 of ordinary dividends, and $539 of qualified dividends for 2012, (3) petitioners failed to report $2,266 of short-term capital gain income, $402 of long-term capital gain income, $934 of ordinary dividends, and $818 of qualified dividends for 2013, (4) petitioners failed to report $1,099 of long-term capital gain income, $1,178 of ordinary dividends, and $1,213 of qualified dividends for 2014, (5) SEI is allowed a deduction of $90,320 for "officer's compensation" and petitioners shall increase their wage income by $90,320 for 2013, and (6) SEI is allowed a deduction of $166,264 for "officer's compensation" and petitioners shall increase their wage income by $166,624 for 2014.

[*3] of Douglas County, Nebraska. That court issued an amended decree of dissolution of marriage on March 30, 2018.[2]

Since January 1, 2000, petitioner husband has been the sole owner of SEI, a subchapter S corporation for all years at issue. SEI provides engineering and design services for commercial and residential construction projects. These services include but are not limited to plumbing systems, electrical systems, and fire sprinklers. Approximately 75% of SEI's business is commercial. SEI is headquartered in Omaha, Nebraska, and has offices in various locations throughout the United States. During the years at issue SEI had offices in California and New York, New York.

Petitioner wife earned a bachelor's degree in human nutrition and food service management and was employed as a nutritionist before assuming bookkeeping responsibilities for SEI in March 2000. She took an introductory accounting course in college but otherwise received only job-specific training from her mother-in-law. Petitioner wife's responsibilities were limited to handling payroll and payroll taxes as well as invoices and accounts receivable. She used a program called Peachtree to handle payroll and invoices.

All other duties relating to finance and accounting were managed by SEI's outside accountant, Steven Kenney, or its in-house accountant, Peggy Hinkle. Petitioner wife signed checks and Ms. Hinkle prepared the checks for her signature. Throughout the years at issue, however, petitioner wife served as SEI's wellness coordinator. During her time as wellness coordinator petitioner wife continued to sign checks but had no other accounting responsibilities.

In the early 2000s SEI began engaging the New York, New York, market. Starting around 2004 petitioner husband made several trips to New York to market SEI's services and build a network for project referrals. Initially, SEI shared office space with an architecture firm. Around 2005 the architecture firm no longer wanted to share space with SEI. During this timeframe petitioner husband stayed in hotels when in New York.

Around 2005 and 2006 SEI had only small projects in New York, but petitioner husband was spending at least a third of his time there.

---

[2] Despite their divorce, and because they were married throughout the years at issue, we refer to petitioners as petitioner husband and petitioner wife for the purpose of this Opinion.

[*4] On December 6, 2006, petitioner husband completed the purchase of a penthouse condominium in New York for $3,250,000. Only petitioner husband was listed as a purchaser of the condominium. Petitioner wife toured the condominium before purchase but played no other part in the decision to purchase it.

The condominium was 2,900 square feet with an outdoor terrace featuring a view of Manhattan. As part of the purchase agreement, petitioner husband agreed that he would occupy the New York condominium as his second home and that he would not rent out the property. On January 1, 2007, petitioner husband executed a lease agreement by which he, in his personal capacity, leased the New York condominium to SEI, for which he signed in his role as president of SEI. The lease agreement permitted SEI to designate use of the condominium to any one employee.

SEI agreed to pay $28,000 per month in rent to petitioner husband for the New York condominium. The rent was calculated to cover petitioner husband's cost of ownership of the condominium. Neither petitioner husband nor petitioner wife consulted a real estate expert to determine the fair market rent. The initial lease agreement expired on December 31, 2009, but this arrangement continued under the terms originally agreed upon throughout the years at issue. The fair market monthly rental values for the New York condominium during the relevant periods were as follows: $22,500 for 2011, $21,500 for 2012, $23,000 for 2013, and $25,000 for 2014.[3]

After the New York condominium was acquired, petitioner husband through SEI purchased various furnishings and made renovations to it. Petitioners used the SEI credit card to purchase furniture for the condominium. These purchases occurred over several years and totaled $326,190. For example SEI claimed depreciation deductions in various amounts for each year at issue relating to a Steinway & Sons baby grand piano, nonoffice artwork, luxury sheets and table linens, furniture, rugs, and other miscellaneous home items.

Petitioners did not use the New York condominium strictly for business purposes. During the years at issue petitioners and their

---

[3] On January 12, 2021, petitioner husband filed a Motion to Admit Evidence seeking admission of a fair market rental value analysis report prepared by Michael Grassi and Jonathan Miller. Respondent made no objection to the Motion and stipulated the report's conclusions. We will grant petitioner husband's Motion to Admit Evidence and admit the fair rental value analysis report into evidence.

[*5] immediate family stayed at the condominium when visiting New York on Thanksgiving weekends and occasionally took personal trips to the city during the summer. Petitioners' daughter lived in the condominium and used the furnishings for a semester while attending New York University in 2013. Neither petitioners nor their accountant tracked the personal and/or business use of the New York condo.

In December 2011 at the request of petitioner husband SEI purchased a 2012 Range Rover automobile for $94,334. Petitioner husband prepared a mileage log sometime in 2012 to document his use of the Range Rover for the purpose of claiming the 2011 deduction. The information on the mileage log was recalled from his memory of where he was on certain dates. Petitioner wife did not prepare documents related to the Range Rover, including a mileage log.

Mr. Kenney, however, did not have the mileage log at the time he prepared SEI's 2011 tax return. SEI failed to report any use of the vehicle, business or otherwise, on its 2011 Form 4562, Depreciation and Amortization. SEI reported a special depreciation allowance of $94,334 for the purchase price of the Range Rover on its 2011 tax return. At the end of 2011 SEI still owned another vehicle that petitioner husband claimed to use for business purposes.

In 2010 petitioner husband met a woman with whom he had an affair while in New York. He met regularly with her for meals in 2010 to 2013. During this time petitioner husband stayed in hotels because he did not want to have her in the New York condominium. To further conceal the affair petitioner husband opened a JPMorgan credit card to hide spending related to the affair. The Douglas County district court found that from 2013 to 2017 petitioner husband made $2,967,717 in payments to the secret credit account and $566,050 in cash support to the extramarital partner sourced from marital funds.

In 2014 respondent opened an examination of SEI's corporate and petitioners' individual tax returns for tax year 2011, which later expanded to the years at issue. The returns in question are complex, and their contents relate mostly to the business activities of petitioner husband. Petitioner wife served no role in tracking the mileage or business use of any SEI property nor in the preparation of SEI's or petitioners' returns. Respondent's remaining disallowances are items related only to SEI.

**[\*6]**  The determined accuracy-related penalties for years 2012 and 2014 were approved on December 17, 2015, when the examining revenue agent's supervisor signed a Civil Penalty Approval Form. The 2013 penalty received supervisory approval on December 19, 2017. Respondent issued the notice of deficiency on December 21, 2017.

OPINION

Generally, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and taxpayers bear the burden of showing the determinations are erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Petitioners do not contend that the burden of proof should shift to respondent under section 7491(a).

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to a deduction. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). A taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976). Generally, an S corporation shareholder determines his or her tax liability by taking into account a pro rata share of the S corporation's income, losses, deductions, and credits. § 1366(a)(1).[4]

Section 172 permits a deduction for the full amount of allowable NOL carrybacks from subsequent years and carryovers from previous years, as long as taxable income for the current year is not less than zero. § 172(a), (b)(2). Petitioners bear the burden of establishing both the existence of the NOL and the amount of any NOL that may be carried forward. *See* Rule 142(a)(1); *United States v. Olympic Radio & Television, Inc.*, 349 U.S. 232, 235 (1955); *Keith v. Commissioner*, 115 T.C. 605, 621 (2000). Petitioners reported losses in 2010 and 2011, and corresponding NOL carryforward deductions for 2011 and 2012,

---

[4] On their 2013 return petitioners reported a long-term capital gain of $424,640 resulting from a distribution to petitioner husband in excess of his basis in SEI. In the event respondent's determinations are sustained and SEI's income is increased for 2013, a corresponding adjustment to petitioner husband's basis must be made. This basis increase would reduce the amount of long-term capital gain petitioners realized for that year.

**[\*7]** respectively.[5]   To the extent that our conclusions below affect petitioners' taxable income for 2010 and 2011, the corresponding NOL carryforwards must be recomputed.

I.    *Rental Expense Deductions*

Section 162 permits taxpayers to deduct all ordinary and necessary business expenses paid or incurred during the taxable year. An ordinary expense is one that commonly or frequently occurs in the taxpayer's business, *Deputy v. du Pont*, 308 U.S. 488, 495 (1940), and a necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business, *Commissioner v. Heininger*, 320 U.S. 467, 471 (1943); Treas. Reg. § 1.162-1(a).   Whether an expenditure is ordinary and necessary is generally a question of fact.   *Commissioner v. Heininger*, 320 U.S. at 475.  A taxpayer must show a bona fide business purpose for the expenditure and there must also be a proximate relationship between the expenditure and his or her business. *Challenge Mfg. Co. v. Commissioner*, 37 T.C. 650, 660 (1962).  A taxpayer's general statement that his or her expenses were incurred in pursuit of a trade or business is not sufficient to establish that the expenses had a reasonably direct relationship to any such trade or business.  *Ferrer v. Commissioner*, 50 T.C. 177, 185 (1968), *aff'd per curiam*, 409 F.2d 1359 (2d Cir. 1969).

Where an expense is primarily associated with profit-motivated purposes and personal benefit can be said to be distinctly secondary and incidental, it may be deducted under section 162(a).  *Int'l Artists, Ltd. v. Commissioner*, 55 T.C. 94, 104 (1970).  If an expense is primarily motivated by personal or social considerations, however, no deduction for it will be allowed under section 162(a).  *Henry v. Commissioner*, 36 T.C. 879, 884 (1961); *see also G.D. Parker, Inc. v. Commissioner*, T.C. Memo. 2012-327, at \*44.  We scrutinize closely transactions in which dominant shareholders and executives receive corporate funds under the label of business expenses.  *Greenspon v. Commissioner*, 23 T.C. 138, 151 (1954), *aff'd in part, rev'd in part*, 229 F.2d 947 (8th Cir. 1956); *Wysong v. Commissioner*, T.C. Memo. 1998-128, slip op. at 8 ("[T]o the

---

[5] We have jurisdiction to consider facts related to closed years that are not directly in issue to the extent that those facts may be relevant to our redetermination of tax liabilities for the years that are before the Court. § 6214(b); *Cluck v. Commissioner*, 105 T.C. 324 (1995).  To redetermine the NOL deduction petitioners claimed for 2012 we must examine the loss petitioners claimed they incurred in 2011.

[*8] extent that rent paid by a lessee to a related lessor is excessive, a rental deduction will be disallowed.").

Respondent disallowed deductions SEI claimed for the expenses of renting the New York condominium from petitioner husband. Petitioner husband testified that the purpose of the condominium was to cause SEI to be perceived as a successful business in the New York City market and to lodge SEI employees travelling there for business matters. Heightened substantiation requirements apply to deductions claimed under section 162 for expenses for lodging while away from home. § 274(d)(1). Section 274(d) requires that the taxpayer substantiate either by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of the expense, (2) the time and place the expense was incurred, (3) the business purpose of the expense, and (4) in the case of an entertainment or gift expense, the business relationship to the taxpayer of each expense incurred. § 274(d) (flush language); *see also* Temp. Treas. Reg. § 1.274-5T(b)(2).

To substantiate by adequate records, the taxpayer must provide (1) an account book, a log, or a similar record, and (2) documentary evidence, which together are sufficient to establish each element of an expenditure. Temp. Treas. Reg. § 1.274-5T(c)(2)(i). Documentary evidence includes receipts, paid bills, or similar evidence. Treas. Reg. § 1.274-5(c)(2)(iii). Although a contemporaneous log is not required, "the probative value of written evidence is greater the closer in time it relates to the expenditure or use." Temp. Treas. Reg. § 1.274-5T(c)(1); *see also* *Larson v. Commissioner*, T.C. Memo. 2008-187. In the absence of adequate records to establish each element of an expense under section 274(d), a taxpayer may alternatively establish an element "(A) [b]y his own statement, whether written or oral, containing specific information in detail as to each element; and (B) [b]y other corroborative evidence sufficient to establish such element." Temp. Treas. Reg. § 1.274-5T(c)(3)(i).

To substantiate the trade or business purpose of the rental expenses, petitioners provided only credit card statements, calendars for those years with dates circled purporting to be when petitioner husband was in New York for business, and their testimony. Petitioner husband testified that the calendars were prepared contemporaneously with his New York visits to track days spent there for tax residency purposes.

**[\*9]**  Petitioners have failed to carry their burden of substantiating the business purpose and the amounts of New York condominium rental expenses for 2011 through 2014.  The calendars, credit card statements, and petitioner husband's generalized testimony fail to do so because "a written statement of business purpose generally is required."  *See id.* subpara. (2)(ii)(B).  The credit card statements and calendar prove where petitioner husband was at the time of a transaction and the amount of the transaction, but they do not provide the reason for the expense or explain why petitioner husband was in New York at the time.  *See Chico v. Commissioner*, T.C. Memo. 2019-123, at \*26, *aff'd*, 128 A.F.T.R.2d (RIA) 2021-6266 (9th Cir. 2021).  Further, petitioner husband's testimony fails to substantiate business purpose by "other sufficient evidence" because his generalized, self-serving statements were unconvincing.  He declined to provide examples of employees or potential clients other than himself and his immediate family using the New York condominium.

In addition to the lack of substantiation of a business purpose, petitioner husband's testimony detailed personal use of the New York condominium, including family trips for the Thanksgiving holiday each year, occasional trips in the summer, and petitioners' daughter's living in the condominium while attending New York University for a semester.  *See G.D. Parker,* T.C. Memo. 2012-327, at \*46–47 (finding that use of property on personal trips and lodging for children to attend school supported disallowance).  Petitioner husband began a relationship with a woman in 2010, creating additional personal motivations to be in New York throughout the years at issue.  Lastly, the fact that petitioner husband agreed at its closing to occupy the condominium as his second home further indicates his intent to make personal use of the property.  For the foregoing reasons we sustain respondent's disallowance of the rental expense deductions claimed by SEI for 2011–14.

II.  *Depreciation Deductions*

A depreciation deduction is allowed for reasonable exhaustion and wear and tear of property used in a trade or business or held for the production of income.  § 167(a); Treas. Reg. § 1.167(a)-1(a).  To substantiate entitlement to a depreciation deduction, a taxpayer must establish the trade or business use of the property and its depreciable basis by showing the cost of the property, its useful life, and the previously allowable depreciation.  *Cluck*, 105 T.C. at 337.  A depreciation schedule alone is insufficient to substantiate the

**[*10]** deduction. *See Holden v. Commissioner*, T.C. Memo. 2015-131, at *65–66.

Section 179 permits taxpayers to elect to deduct the full cost of section 179 property for the year it is placed in service. § 179(a). Section 179 property includes tangible property to which section 168 applies. § 179(d)(1)(A)(i). To the extent the property is used for nonbusiness purposes, the deduction is permitted for the portion of the cost of the property attributable to the trade or business use. Treas. Reg. § 1.179-1(d)(1). No deduction is permitted under section 179 where less than 50% of the property's use is for trade or business purposes. Treas. Reg. § 1.179-1(d)(1).

Petitioners claimed depreciation deductions related to the numerous home furnishings placed in the New York condominium for the years at issue. Petitioner husband testified that these purchases, totaling over $300,000, were necessary to show potential clients of SEI that he had a home in New York City and was successful in and committed to the market. Respondent disallowed these deductions and petitioners' prior year loss carryover claimed in 2011 resulting, in part, from the disallowance of a $40,384 section 179 depreciation deduction from a prior year relating to the furniture purchased for the New York condominium.

As discussed with respect to the rental expenses petitioners failed to substantiate any instance in which someone other than petitioners or their immediate family stayed the New York condominium for a business occasion. Further contradicting the claim that the depreciated property was used in a trade or business is petitioners' extensive use of the condominium for personal reasons as described above. Petitioners and their close family were the only individuals who enjoyed the use and benefit of the furnishings. *See* § 262; *Henry*, 36 T.C. at 884. We sustain the disallowance of the deductions claimed for each year at issue relating to depreciation of such property.

To determine the annual wear and tear of tangible property, the Code generally requires taxpayers to use the modified accelerated cost recovery system outlined in section 168. Under section 168(k)(1)(A), the depreciation deduction provided by section 167 includes a first-year special allowance for qualified property acquired and placed in service from September 9, 2010, through December 31, 2011. § 168(k)(5). For 2011 the first-year special allowance deduction was equal to 100% of the adjusted basis of such qualified property. *Id.* "Qualified property"

[*11] includes any tangible property with a recovery period of 20 years or less. § 168(k)(2)(A)(i)(I). Automobiles have a recovery period of five years. § 168(e)(3)(B). Property for which trade or business use does not exceed 50% of its total use is not "qualified property." §§ 168(k)(2)(D), 280F(b)(1), (3).

Section 280F(a) limited the bonus depreciation deduction for automobiles with less than 6,000 pounds of "unloaded gross vehicle weight," but no such limitation applies to automobiles with an "unloaded gross vehicle weight" of more than 6,000 pounds. § 280F(d)(5)(A). For 2010 businesses could either elect to expense the cost of a qualifying new vehicle under section 179 and depreciate the remaining cost basis, or, if the property was used entirely for business purposes, depreciate the full cost in the first year under the 100% bonus depreciation provision.

To substantiate a claimed deduction with respect to any "listed property (as defined in section 280F(d)(4))," a category including "any property used as a means for transportation," § 280F(d)(4), the taxpayer must meet the heightened substantiation requirements under section 274(d), described above, § 274(d)(4). Relevant to the deduction claimed for depreciation of the Range Rover, this includes "the business purpose of the expense or other item." § 274(d) (flush language).

Petitioners have not carried their burden of substantiating the trade or business purpose of the Range Rover. Petitioner husband provided a mileage log which he alleges shows the vehicle's use in 2011. The log indicates that of the miles driven in the Range Rover, 1,463 (95.43%) were for a trade or business purpose and 70 (4.57%) were for personal use. Petitioner husband testified that he prepared the log sometime in 2012 in anticipation of preparing his 2011 tax return. The 2011 tax return's depreciation schedule, however, fails to report any business use of the Range Rover.

The failure to report any use of the Range Rover on the 2011 tax return contradicts petitioner husband's testimony and suggests the mileage log was prepared sometime after the filing of the 2011 return. Further, the mileage log merely states where petitioner husband claims he drove to and from on certain dates and the number of miles driven, with no explanation of the business purpose of any trip. *See Larson*, T.C. Memo. 2008-187, slip op. at 12–13 (finding mileage logs coupled with highly probative testimony sufficient when, although not prepared contemporaneously, logs were prepared on the basis of contemporaneous records and were exhaustively detailed). The lack of business purpose

**[\*12]** on the mileage log makes it insufficient to substantiate the claimed deduction by adequate records, and petitioner husband's unconvincing testimony fails to do so by other sufficient evidence. Accordingly, SEI is not entitled to depreciate the Range Rover under section 167 or expense it under section 179.

III.   *Net Operating Losses*

In calculating the NOL amount for an individual taxpayer, only certain deductions, including passthrough S corporation losses, are considered.  *See* § 172(c) and (d).  Losses from an S corporation are limited to the shareholder's basis in his or her stock in the corporation and any indebtedness of the S corporation to the shareholder. § 1366(d)(1).  Any part of the loss in excess of the shareholder's basis may be carried forward indefinitely until the shareholder has an adequate basis in the corporation to absorb the loss.  § 1366(d)(2).

A taxpayer who claims an NOL deduction bears the burden of establishing both the existence of the NOL and the amount that may be carried over to the year involved.  *See* Rule 142(a); *Keith*, 115 T.C. at 621 (citing *Jones v. Commissioner*, 25 T.C. 1100, 1104 (1956), *rev'd and remanded on other grounds*, 259 F.2d 300 (5th Cir. 1958)).  A taxpayer claiming an NOL deduction must file with his return "a concise statement setting forth the amount of the [NOL] deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the [NOL] deduction." Treas. Reg. § 1.172-1(c).

Respondent determined that SEI's 2010 taxable income should be increased because of a basis adjustment and the disallowance of deductions petitioners claimed for rental expenses and depreciation relating to the New York condominium.  Petitioners reported a loss in 2010.  An increase to SEI's 2010 taxable income results in a reduced allowable NOL carryover from 2010 to 2011.  Respondent further determined that SEI's NOL carryover from 2011 to 2012 should be reduced because of (1) the reduced NOL carryover from 2010 to 2011, (2) the disallowance of rental expense and depreciation deductions relating to the New York condo, and (3) the disallowance of the depreciation deduction relating to the Range Rover.

Petitioners have not established their incurrence of and entitlement to deduct losses related to the rental expenses and depreciation of the New York condominium or depreciation of the Range

**[\*13]** Rover.     Petitioners have not met their burden to claim corresponding NOL deductions.   Petitioners' 2011 and 2012 NOL deductions must be recomputed accordingly.

IV.   *Penalties*

Respondent determined an accuracy-related penalty under section 6662(a) for each year at issue.  Section 6662(a) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if, as provided by section 6662(b)(1), the underpayment is attributable to "[n]egligence or disregard of rules or regulations."  Negligence includes "any failure to make a reasonable attempt to comply" with the internal revenue laws, and "disregard" includes "any careless, reckless, or intentional disregard."  § 6662(c). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Treas. Reg. § 1.6662-3(b)(1).  The initial determination of such penalties must be personally approved in writing by the immediate supervisor or other such official designated by the Secretary to give such approval. § 6751(b)(1).  Petitioners do not dispute that respondent met the requirements of section 6751(b).

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which the taxpayer shows reasonable cause and good faith.  § 6664(c)(1); *see Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001).   Reasonable reliance on informed, competent professionals may establish reasonable cause.  *United States v. Boyle*, 469 U.S. 241, 250–51 (1985).  A taxpayer claiming reliance on their advisers must establish by a preponderance of the evidence that (1) the adviser was competent and possessed sufficient experience to justify reliance, (2) the taxpayer provided accurately all necessary information to the adviser, and (3) the taxpayer relied on the adviser's judgment in good faith.  *Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002).  Whether a taxpayer relies on an adviser and whether such reliance is reasonable depends upon all pertinent facts and circumstances of the case.  Treas. Reg. § 1.6664-4(c)(1).

Petitioner husband claims that he is not liable for the determined penalties because of his reliance on tax advisers concerning the items respondent disallowed.  Mr. Kenney testified that he, a small business attorney, and petitioner husband had substantial discussions about the need to maintain a proper business use of the property.  Given petitioner

[*14] husband's business experience, financial sophistication, and the manner in which he used the assets in question, we do not believe that he was unaware of the need to track business use, or that his claimed reliance on his advisers was in good faith.

The penalty does not apply to a portion of an understatement attributable to a taxpayer's tax treatment of an item "if there is or was substantial authority for such treatment." § 6662(d)(2)(B). An authority that "is materially distinguishable on its facts from the facts of the case at issue" is "of little relevance." *Antonides v. Commissioner*, 91 T.C. 686, 702–03 (1988), *aff'd*, 893 F.2d 656 (4th Cir. 1990); *see* Treas. Reg. § 1.6662-4(d)(3)(ii).

Petitioners argue that *Norman E. Duquette, Inc. v. Commissioner*, T.C. Memo. 2001-3, provided substantial authority for their positions with respect to the New York condominium. The facts of *Norman E. Duquette*, however, are materially distinguishable from those of petitioners' case. Petitioners are correct that in *Norman E. Duquette* a shareholder of a C corporation used an apartment instead of hotels for his business travels in order to reduce his expenses. In contrast to the facts of this case, the shareholder in *Norman E. Duquette* substantiated his expenses. Further, petitioners did not show that the condominium was a cost savings for SEI. They have pointed to no other authority supporting their positions in this case, and they do not qualify for the substantial authority exception to the determined penalties.

Accordingly, petitioners are liable for the section 6662(a) penalties.

V.   *Innocent Spouse Relief*

Generally, spouses who file a joint tax return are each fully responsible for the accuracy of that return and the full tax liability under section 6013(d)(3). *Butler v. Commissioner*, 114 T.C. 276, 282 (2000). A spouse may seek relief from this joint and several liability under section 6015(b) or, if eligible, may allocate liability under section 6015(c). If relief is not available under subsection (b) or (c), a requesting spouse may seek equitable relief under subsection (f). Petitioner wife seeks relief pursuant to section 6015(f) for items attributable to the

**[\*15]** nonrequesting spouse.[6] *See* Rev. Proc. 2013-34, 2013-43 I.R.B. 397, *modifying and superseding* Rev. Proc. 2003-61, 2003-2 C.B. 296.

We apply a de novo standard of review to any determination made by the Commissioner under section 6015. *Porter v. Commissioner*, 132 T.C. 203, 210 (2009), *superseded in part by statute*, Taxpayer First Act, Pub. L. No. 116-25, § 1203, 133 Stat. 981, 988 (2019). For this case, we will also employ a de novo scope of review.[7] Petitioner husband contends petitioner wife is not entitled to relief on the basis that she had knowledge of the understatements at the time she signed the joint returns. Respondent has conceded that petitioner wife is entitled to innocent spouse relief.

Section 6015(f)(1) permits relief from joint and several liability if it would be inequitable to hold the requesting spouse liable for any unpaid tax or deficiency. Under section 6015(f), the Secretary may grant equitable relief to a requesting spouse on the basis of the facts and circumstances. Petitioner wife bears the burden of proving that she is entitled to equitable relief under section 6015(f). *See* Rule 142(a); *Porter*, 132 T.C. at 210.

The Commissioner has specified in Rev. Proc. 2013-34 the procedures governing equitable relief. Although we are not bound by Rev. Proc. 2013-34, and our determination ultimately rests on an evaluation of all the facts and circumstances, we will analyze petitioner wife's request under the guidelines set forth therein to ascertain whether she satisfies the requirements for relief. *See Pullins v. Commissioner*, 136 T.C. 432, 438–39 (2011); *Johnson v. Commissioner*, T.C. Memo. 2014-240, at \*10.

Rev. Proc. 2013-34, § 4.01, 2013-43 I.R.B. at 399–400, sets forth seven threshold conditions that must be satisfied before the requesting

---

[6] In her posttrial briefs petitioner wife requested innocent spouse relief pursuant only to section 6015(f). We deem her to have abandoned her request for relief under section 6015(b) and (c). *See Thiessen v. Commissioner*, 146 T.C. 100, 106 (2016); *Mendes v. Commissioner*, 121 T.C. 308, 312–13 (2003).

[7] Section 6015(e)(7) prescribes the scope of review the Tax Court shall employ in cases such as this one. Paragraph (7) was added to section 6015 by Taxpayer First Act § 1203, 133 Stat. at 988, and applies to petitions for review of determinations made under section 6015 filed on or after July 1, 2019, and requests pending with the Internal Revenue Service on or after July 1, 2019. *See Sutherland v. Commissioner*, 155 T.C. 95, 104 (2020). Section 6015(e)(7) does not apply because respondent did not issue a notice of determination. The scope of review in this case is established by *Porter*, 132 T.C. at 206–10.

**[\*16]** spouse will be eligible for equitable relief under section 6015(f). The parties do not dispute that the seven threshold requirements are met.

The second step of the analysis provides three conditions that, if met, will qualify a requesting spouse for a streamlined determination of relief under section 6015(f). Rev. Proc. 2013-34, § 4.02, 2013-43 I.R.B. at 400. Petitioner wife is not eligible for a streamlined determination because one requirement is that the requesting spouse would suffer economic hardship if relief were not granted. *See id.* Petitioner wife did not contend that she would suffer economic hardship if denied relief.

The third step is available if the requesting spouse satisfies the threshold conditions but fails to satisfy the conditions for a streamlined determination. *Id.* § 4.03, 2013-43 I.R.B. at 400. A requesting spouse may still be eligible for equitable relief under section 6015(f) if, considering all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the unpaid deficiency. Rev. Proc. 2013-34, § 4.03. Rev. Proc. 2013-34, § 4.03, 2013-43 I.R.B. at 400–03, lists the following nonexclusive factors: (1) marital status; (2) economic hardship; (3) knowledge, or reason to know, of the item giving rise to the deficiency; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health.

We find that most of the factors are neutral. Looking at the facts and circumstances, the factors with the most relevance to this case are knowledge or reason to know of the item giving rise to the deficiency and significant benefit.

Petitioner husband contends that petitioner wife had knowledge of the items that give rise to the deficiency, including the disallowance of deductions for rental expenses and depreciation for the New York condominium, and depreciation deductions relating to the Range Rover. If the requesting spouse did not have actual knowledge or reason to know of the understatement at the time of the filing of the joint return, this factor favors relief. *Id.* § 4.03(c)(i)(A), 2013-43 I.R.B. at 401. Actual knowledge of the item will not be weighed more heavily than another factor. *Id.* The facts and circumstances considered in determining whether the requesting spouse has reason to know of an understatement include, but are not limited to, the requesting spouse's level of education, deceit or evasiveness of the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business or household

[*17] financial matters, the requesting spouse's business or financial expertise, and lavish or unusual expenditures compared with past spending levels. *Id*. § 4.03(c)(iii), 2013-43 I.R.B. at 402.

Petitioner wife attended college and was a trained nutritionist, but she did work SEI during the years at issue. During this time, however, she was the wellness coordinator. She signed checks but was not responsible for any other accounting function. Ms. Hinkle was the in-house accountant for the years at issue and was responsible for all regular accounting tasks. Petitioner husband, in consultation with SEI's outside accountant, was responsible for the purchase of and accounting concerning the Range Rover. Petitioner wife was not involved with keeping the mileage log for the Range Rover nor in the claim that it was used for business purposes.

Petitioner wife was involved in household financial matters, but there is no evidence linking her to SEI's business decision making. There is also no evidence showing that petitioner wife was aware of her husband's lease with SEI regarding the condominium. Petitioner wife traveled to New York infrequently compared to her husband. She went to New York for some family holidays. She had no reason to question that her husband was staying in the condominium because of business in New York.

Petitioner husband was deceitful in his relationship with his wife. He hid his affair and opened a secret credit card to hide spending associated with it. He funded the affair by diverting marital assets unbeknownst to petitioner wife. Considering all the facts and circumstances, petitioner wife did not have reason to know of the understatements.

The other relevant factor is whether the requesting spouse significantly benefited from the understatement. A significant benefit is any benefit in excess of normal support. *Id*. § 4.03(e), 2013-43 I.R.B. at 402. Petitioner wife did not benefit at all from the Range Rover, and she rarely stayed in the New York condominium. She received only a minimal benefit from the condominium, and she would likely have received the same benefit when visiting petitioner husband in New York if he had continued staying in hotels. There is no evidence that petitioner wife made large expenditures or received lavish benefits.

**[*18]** Taking into consideration these two factors, we conclude that petitioner wife is eligible for innocent spouse relief pursuant to section 6015(f).

We have considered all of the parties' arguments and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*